Chief Justice. Robertson
delivered the Opinion of the Court— Judge Nicholas, dissenting upon-the preliminary question of the jurisdiction of th.s court, and participating no further in the decision.
At the February term 1833, of the Lincoln circuit court, Horatio Bruce read in court a commission, signed “John Breathitt,” governor of this commonwealth, dated February 4th, 1833, purporting to appoint him attorney for the commonwealth, for the twelfth judicial district (including Lincoln county,) until the end of the next session of the legislature; and thereupon moved the court for leave to take the oaths prescribed by law, and to proceed to discharge the duties of the office.
Fountain T. Fox, who claimed the same office, opposed the motion, and read a commission signed, “ Thomas Metcalfe,” late governor of Kentucky, appointing him, with the advice and consent of the senate, commonwealth’s attorney for the same district, during good behavior, and dated January the 15th, 1831; and also read a certified copy of an act of assembly, entitled — uJln act continuing in force the law providing for the appointment of commomoealtlds attorneys,” approved December the 22nd, 1832.
Whereupon, the parties having agreed, that Fox had been duly qualified, and had continued to act as the attorney for the said district,’ and had never resigned his said commission, or removed from the district, and that Bruce wasthe same “Horatio Bruce,” whose nomination for the same office had been rejected by the senate, in January, 1833, on the ground that, in the opinion of the senate, there wasno vacancy — the court, after hearing argument, iladjudged that Fountain T. Fox was in office as attorney for the commonwealth, and, as such, entitled to discharge the du *448 ties;” and consequently, “overruled the motion made by Bruce, and refused to permit him to qualify as attorney for the commonwealth, under his commission.”
This court has jurisdiction to revise the judgment of the circuit court, upon, the motion of a party, asserting his appointment to the office of attorney for the com’th,;}- moving for leave to take the oaths of office, and enter upon the duties. '
Judge Nicholas thinks the question settled otherwise. See his Dissent, p. 457.
The clause of the act giving the court of ap■peals jurisdiction “ in cases in which the inferior cts. have cognizance” ap plies only to jzi-dicial proceedings, not to dis-cretionaryor executive acts.
*448 To reverse that decision this writ of error is prosecuted— by consent.
As consent cannot give jurisdiction, the right of this court to take cognizance of the case, as presented, is a preliminary question which must be considered and settled.
“The court of appeals, except in cases otherwise directed in this constitution, shall have appellate jurisdiction only, which shall be coextensive with the state under such restrictions and regulations, not repugnant to this constitution, as may from time to time, be prescribed by law.” (2nd. section of the 4th article of the constitution.)
The only statutory regulations materially affecting the question of jurisdiction in this case, are the following: — “In cases in which the inferior courts have cognizance” — “the court of appeals shall have appellate jurisdiction” — (11th section of an act of 1796; 1 Dig. 381.) “Writs of error shall, upon the demand of the person applying for the same, he issued, as a matter of right, except in those cases which may he brought before and determined by the district courts under the criminal jurisdiction.” (13th section of the same act, p. 382 — ) “No appeal shall he granted to the court of appeals, or writ of error sued out from the court of appeals, except in cases where a final decree hath been pronounced, judgment rendered, or order made” (1st sec. of an act of 1804, 1 Dig- 388.
The jurisdiction thus conferred, is very comprehensive, and has been curtailed by some statutory exceptions and restrictions; but none of these apply to this case.
“ Cases in which the inferior courts have cognizance ” must he'understood to include only cases in which the court acts judicially, by rendering some judgment or decree, or making some order affecting some personal or pro-prietory interest defined and regulated by law, and not depending on the arbilrimn of the tribunal. Such dis- *449 e-retionary or executive acts as neither establish any right, or decide any rule of law, or any principle, are not judicial; and therefore, are not revisable by this court.
The executive or discretionary acts of inferior courts — such as an appointment of a clerk, or the removal of a guardian — are not subject to revision by the appellate court.
Where one who claims an office, moves a court in which the services are required, to be qualified and recog-nised as the proper officer, another person who claims the same office,may be admitted as a party to the motion ; and either may have a writ of error to correct the judgment, to which the other may be made a defendant.
Discretionary acts (such, for example, as an appointment of a clerk, or the removal of a guardian,) which do not establish or violate any right, defined and guar-rantied by law, are not judicial, and are therefore, not directly revisable in this court.
But, in granting letters of administration, and in settling an administrator’s accounts, (though ex parte,) the courts act judicially, because the law designates the person who shall he entitled to administration, and makes the settlement of an administrator’s accounts in the county court prima facie evidence, which may essentially affect the rights of persons who may be interested.
Tested by these. criteria, this case presents all the at" tributes of a judicial decision. If Bruce’s commission invested him with the rights and privileges of the attorney for the twelfth district, he had a clear legal right to take the oaths of office in court, and to proceed, thereupon, to discharge the duties and exercise the powers incident to the station which had been allotted to him by the constituted authorities of the commonwealth, and for the benefit of the public; and, of course, the court had no right to overrule his motion, made at a proper time and in an appropriate manner. Fox opposed the motion because he claimed the office himself; and the record, made up by consent, may authorize the inference, that both Bruce and Fox were parties, and intended to to present a case in which the court should decide on their conflicting claims, and determine without the circuity, delay or expense of a formal suit, who was the rightful attorney for the commonwealth in that circuit. The court did so decide, and in consequence of that decision, overruled Bruce’s motion, in doing which (if he was the lawful attorney,) it withheld from him a legal right, disregarded the lent!, and pronounced a judgment, or made a judicial order, prejudicial to him.
In such a case the court had no discretion; its duties were clearly defined and expressly prescribed by posi *450 tive law; and, if it erred, (he error was one of judgment as to the law and the rights of Bruce. V' eare disposed,to think that Fox voluntarily made himself a party, for the purpose of expeditiously trying'the dispute cl right, and, if the court had decided against him, and thereupon, deeming him not to he the proper prosecuting, attorney of the court, had interdicted him, and had installed Bruce, he (Fox) might have prosecuted a writ of error.
One claiming an office may move the court where the services of the officer are re quired, for leavo to take the oaths and proceed in the duties, maybe heard ex par te, Sf may have a writ of error, ex parte, to reverse the decision upon his motion.
But even had Fox been no party in the circuit court, Bruce might, in our opinion, have prosecuted a writ of error to this court.
In defining a suit in court, it is generally said that there is “actor, reus ami judex;” and generally this is true. But it is not universally true, that there can be no judgment, or judicial order, without both actor and reus. “An action is a lawful demand of one's right” — Co. Lit. 285, a. 2 Institutes, 40. and such a demand may be made judicially in an ex parte proceeding or application, or without any action; a legal right may be violated, or withheld erroneously, by a court acting me) ely ex officio.
If a circuit judge refuse to permit a licensed attorney to practice in his court, may he not, if injured thereby, have the error of the judge corrected? As this court has no original jurisdiction, a mandamus could not he issued to the circuit, court. Then, is the attorney reme-diless? Fie has no remedy unless he can bring his case to this court by writ of error. If a circuit court, having jurisdiction by law to decide on applications for certifi--cates for appropriating vacant land, had erroneously overruled an application, would the injured applicant have been without redress? His only remedy, would have been a writ of error. If a circuit judge, without ■sufficient cause, disbar a practising attorney, must he submit to the wrong, or may he complain to a superior and revising tribunal? A writ of error would be his only remedial resource.
In all these supposed cases, and in many others, altogether * ex parte, the act of the judge is judicial; tie-cause it is an exercise of his judgment upon a legal ris-hf which does not depend on his arbitrium, but is defined *451 and protected by the laws of the land. And the party injured in any such case, may bring a writ of error to this court, to correct a judicial error to his prejudice. The writ of error is directed to the clerk of the inferior court, and only commands him to send the record this court. If the case be ex parte, no summons will be issued. The object of the writ is to place the record before this court for revision of the judgment or judicial order. Ex parte writs of error are known in every revising court. And when this court spoke of uactor, reus and judex,” in the cases of Allaway, in Bibb’s Reports, [2 Bibb, 554] and of Taylor, in J. J. Marshall’s [3. 401] it should be understood as only repeating the common definition of a suit, and as using it to fortify other considerations tending to shew that the cases it was then deciding on, were not such as should be deenied judicial. If a- judicial case can be ex parte in the circuit court, it must be ex parte here.
But Pox not only made himself a party in the circuit court, but has vountarily made himself a party in this court, and if he had done neither, he might have been made a party in invito here, because it was at his instance, and for his benefit that Bruce’s motion was overruled, and had there been no deíe ulant in this court, it is our opinion that Bruce might have prosecuted a writ of error. A suit for disturbance, could he have maintained such an action, could not operate directly on the circuit court, nor necessarily establish, him in the functions of the office-which he claims. Nor would the right to prosecute such a suit, or even its actual prosecution, affect the jurisdiction of this court in this case. The right to take cognizance of this case depends solely on another question'; and that is, whether or not the circuit court acted judicially, or, in other words, rendered any judgment, or made any judicial and final order.
It seems to us, that it would be an anomaly in our jurisprudence if (conceding that Bruce is the legal attorney for the commonwealth) there should he no power in a tribunal of the last resort to correct an unauthorized act of the circuit court, operating to his prejudice $nd withholding from him lus legal rights, asserted in *452 court, at a proper time, and in a proper manner, and opposed in form by another person, claiming- for himself the same rights, and submitting the facts to the decision of the court. But in the opinion of this court, such an anomaly does not exist. The case is one of ■which the circuit court had “cognizance,” — in which It acted judicially — and in which too it rendered a decision between the conflicting claims of adversary parties, and made a judicial and jinal “order.”
A com’Hli’s attorney, duly appointed, has a right to hold his oflice during good behaviour and the continuance of his office.
If this should be deemed an agreed case, Bruce could not make a similar motion again. But if he might have made a similar motion, to the same court, at a subsequent time, and if the circuit judge might, on such motion, have permitted him to take the required oaths and proceed in discharging the duties of the office, a repetition of the motion would have been disrespectful to the court ; and it was not Bruce’s duty to rely on such a hopeless resource. And, therefore, considering the order, as it purported to be, it should be deemed, not only a judicial, but a final order. It is not an interlocutory-order.
Wherefore, a writ of error may be prosecuted to this court, for revising the opinion, and for correcting the-order of the circuit court. This is the opinion of a majority of the court — Judge Nicholas dissenting.
The decision of the circuit court must, therefore, be considered.
As we are not disposed to enquire into the propriety or constitutional validity of the acts of a co-ordinate department of the government, unless a proper case require a judicial opinion respecting them, we shall not determine, as we have been urged in argument to do, whether — admitting that, at the date of Bruce’s commission, there was a vacancy in the office — the executive had a right to fill it, by such commission, without the concurrence of the Senate : for it is our opinion, that there was no vacancy in the office when Bruce was commissioned.
The constitution of Kentucky (Article vi. Sec. 12th,) declares,'that, “ the Attorney General and other attor-uics for the Commonwealth, who receive a fixed annu, *453 ,al salary from the public treasury, judges and clerks of courts, justices of the peace, surveyors of lands, and all commissioned militia officers, shall hold their respective offices during good behaviour and the continuance of their respective courts
An office may bo created by statute, the term of which is Axed by the constitution ; and if the term be during good behaviour, the officer may hold it as long as the statute remains in force, and no longer— whether it be re pealed, expires by its own limitation,or is con tinued in force by another act.
If, according tó a proper interpretation of this clause of the fundamental law, attorneys for the commonwealth, who draw a fixed annual salary from the public treasury, have a right to hold their offices during the continuance of their respective courts, provided they so long behave well, then, whether the law creating the office had expired or not, at the end of two years, Fox still had a constitutional right to the office, because the office, once created and filled, could not have been limited in its duration, otherwise than as it was limited by the supreme law. But it is unnecessary to intimate an opinion as to the true import and effect of the constitution in this particular, because we are of the opinion that, (conceding that attornies for the commonwealth, like surveyei's and militia officers, are not embraced in so much of the clause as declares that the tenure of office shall be coextensive with '■'■the continuance of their respective courts,” and that that part of the section applies only to judges, justices of the peace and clerks of courts,) Fox had a constitutional right to hold his office during good behaviour and the continuance of his office, and that the office continued to exist when Bruce was commissioned, and still continues.
Bruce insists that the office was limited to two years ; that, therefore, the commission, “ during good behaviour,” should be understood as necessarily implying only good behaviour for two years, and that, consequently, Fox could not hold the office longer than two years without another commission. It seems to us, that this argument, though plausible, is not sound.
The operation of the statute, under which Fox was commissioned, was limited, by its terms, to two years ; but the duration of the office which it created was not necessarily restricted to the same period. The office must continue as long as the law which created it shall con *454 tinue, and no longer. The legislature, When it declared that the law should continue in force for two years, meant no more and could have done no more, than to say that the law should continue for two years, unless sooner repealed, and should continue to operate no longer than two years, unless, before the expiration of that-time, its operation should be prolonged by the legislature. Had the law been enacted without any legislative attempt to limit its operation, the office which it established would have continued to exist as long as the law should have remained in force, and no longer. A repeal of the law by the legislature next succeeding that which enacted it, would have abolished the office ; and there being no .office, there could he no officer ; for, if the constitutional tenure be “good behaviour,” and the continuance of the office, (and not the continuance of the circuit courts,) then, as the office is only legislative in its creation, it may be abolished by legislation, and when thus abrogated, the incumbent is, ipso jacto, out of office.. Declaring that the law should continue in force for two. years, had no effect on the duration of the office. A repeal of the law before the expiration of the two years would have curtailed — a prolongation of it for four or ten years or indefinitely would have extended, the projected duration of the office. As repealing the law would abolish the office, continuing the law would continue the office. The commission was, as the constitution required that it should be, '•'■duringgood behaviour.” The legislature had no povier to prescribe any other condition or limiiation ; and had it attempted to do so, its act, in that respect inconsistent with the supreme law, would have been inoperative ancl void. As the officer may, under the constitution, hold the office during good behaviour and the continuance of the office, if the law liad been repealed or been permitted to expire, lie would have been out of office ; but as it was neither repealed, nor permitted to expire, but was continued in force by a subsequent statute enacted prior to the time fixed for its expiration by its own terms, the officer still has a right to hold.the office during good behaviour and the continuance of the office. *455 And he holds his office under the law which created it, and under which he was commissioned. That law was not reenacted or revived ; but was only continued in force by an act which repealed so much of it as prescribed its own limitation. The continuance of the law, and the consequent duration of the office, depend, not on the law itself, hut altogether on legislative will, like all other offices of legislative creation. 1 he effect of the limitation was only that the office should continue for two years and no longer, unless the legislature should, in the mean time, repeal the law, or extend its operation for a longer term. The office might not have continued two years, because the law might in the meantime, have been repealed. It mav continue indefinitely or as long as the legislature shall deem expedient. It cannot therefore, with any propriety, be denominated or considered an office for two years, or for any other definite period beyond which it cannot extend.
But it is argued that the the appointing organs (the governor and senate) deemed the office one of two years duration only, and therefore selected officers who might not have been preferred had the duration of the office been unlimited, indefinite, or contingent. There are three answers to this argument: first. It is founded on a pe-titio principii ■ It assumes, as its basis, that which is tube proved; that is, that the governor and senate deemed the appointments which they made to be limited to two years. Second. The appointing organs of the government should be presumed to have known that, in virtue of the constitution, the officers whom they appointed would have a right to hold their offices during good be-haviour and the continuance of their respective offices, at least; and that the duration of the offices was altogether contingent, because the legislature might abolish them by repealing the law before the expiration of its two years; or might, by forbearing to act, suffer them to expire with the expiration of the law; or might prolong their existence by continuing the life and operation of the law. Third. But the duration of the office does not depend on what the governor and senate may have *456 thought when they filled it by making appointments. It depends on legislation and on the constitution. Had the law creating the offices contained no limitation, and had the appointments been made with a view to the indefinite duration of the offices, the legislature might, immediately afterwards, have repealed the law, or prescribed a limitation to its operation. And this the governor and senate should be presumed to have known also. When such appointments are made, they should bo made with a view to the power of the legislature to curtail or prolong the duration of the offices, and must be presumed to have been so made. Had the law, like ordinary statutes, been indefinite as to its duration, the legislature, if dissatisfied with the offices or with the incumbents, might have abolished the offices; but if satisfied with both the offices and officers, the legislature, by forbearing to act, would have permitted them to continue. There is no essential difference between the case supposed and this case. In this case, the office has been continued by the act of the legislature. In the other case, the office would have continued in consequence of jor-bearance to act. But in each case, the continuation of the office would have been the offspring of legislative will. And if it be objected that, in the one case, the legislature alone may continue an officer in office, or legislate him out of office, the same objection may be urged with equal propriety and force in the other case. Such is the supreme will of the constituent body as expressed in the organic law; and it is not the province of this court to enquire into its prudence or its wisdom. Legislative discretion may be perverted, legislative power may be abused; but the discretion being conceded and the power admitted, the expediency of the legislative will, or the motives which may actuate that will in a given case, is not a fit or allowable subject of enquiry or investigation, in this forum. This court must deem the public good to have been the aim and end of every constitutional act of the legislature.
As, therefore, Fox had a constitutional right to hold his office during good behaviour and the continuance of the office, and as the office has never ceased to exist since he *457 was commissioned, there was no vacancy when Bruce was commissioned; and consequently, Bruce was never in office, and the circuit court decided correctly in overruling his motion.
October 31.
Dissent — by j'ullSe Nicho-ceives that the XéTthis court can take juris-case^baf been settled, in the two^former de-c'sions, Sr that late to”einves-*'Sate tlle mat-
- Wherefore, the order of the circuit court is approved and affirmed.
Judge Nicholas

delivered the following dissentient Opinion, upon the question of jurisdiction involved in this case.

If we conform to the decisions of this court, I do not perceive how we can take jurisdiction over this writ OI error. It is a question depending entirely upon the proper construction to be given to the acts of assembly which regulate the jurisdiction of this court. Former decisions have settled that construction.
By the elteventh section of the act of 1796, 1 Dig. 381, appellate jurisdiction is given “in cases in which the infe-xior courts have cognizance;1’ and by the first section of the act of 1804, 1 Dig. 388, it is declared, that, “no appeal shall be granted to the court of appeals, or writ of error sued out from the court of appeals, except in cases where a final decree hath been pronounced, judgment rendered, or order made,
The cases of Piat vs. Allaway, 2 Bibb, 554, and Taylor vs. Commonwealth, 3 J. J Mar. 401, have determined that these acts give us jurisdiction over no cases except those that are of a judicial nature. They also determine, that in every judicial case, there are regularly three persons — the actor, reus and judex.
There is no party defendant to the order or judgment here. Fox having opposed Bruce’s motion did not necessarily make him a party defendant to the proceeding.
Any other person had equal right and authority to oppose the motion, and would have met with the same success upon manifesting the same facts. Fox can be viewed in no other light than as a mere intruder, or at least as a mere amicus curice
It is no agreed case, in which the parties have voluntarily submitted to the court, for a decision of their respect *458 ive rights to tiie office. It is a motion made by Brnce for permission to qualify, and discharge the duties of attorney for the commonwealth — the bill of exceptions which he took to the opinion of the court overruling his motion barely stating, that on the hearing of the motion, certain facts were admitted or agreed.
If Fox be a party defendant, then he would have had a right to prosecute a writ of error, to the order of court, provided Bruce had been allowed to qualify. The right mnst be mutual, or neither can have it.
The case of Taylor vs. Commonwealth is an express negation of any such right on the part of Fox. The county court determined that Taylor had vacated his office of clerk, and therefore, proceeded to appoint another per son clerk, and it was held that Taylor could prosecute no writ of error, though he was in court opposing and excepting to his own expulsion and the admission of the other. It was held that there had been no judicial proceeding trying his right to the clerkship, and it is expressly said, that, “if the county court had made an order, declaring that he should not act as its clerk, because it deemed him not its clerk, he could maintain no writ of error to reverse such order.” If the decision of the circuit court had been in Bruce’s favor, then the position of Fox would have been identical with that in which it is here said Taylor could not have maintained a writ of error. The circumstance that, in the one case the question was of a clerkship, a vacancy in which the court had a right to fill, and in the other, of an attor-neyship, to which the court had no power of appointment, can constitute no difference between the cases on this point. Until a vacancy took place, the county court had no more right to oust the old, and appoint a new clerk, than the circuit court had to appoint an attorney or admit a new one of the governor’s appointing. The filling a vacancy in the office of clerk, is, no doiibt, a purely ministerial act, not revisable in any way by a superior court. But the determination of the question whether there was a vacancy, was as much a judicial determination, as it is here, whether there was a vacancy *459 in the office of attorney at the time Bruce was appointed, and there can be no doubt, that, if the county court erred in the determination that Taylor had vacated his office, their decision could have been, and would have been overhauled and corrected, by a proceeding under a mandamus or quo warranto. No error of judgment in executing the mere ministerial or executive duty of filling a vacancy actually existing, could have been overhauled and corrected in that or any other manner. The position of Fox, if the decision had been in favor of Bruce, would then in all respects, have been exactly the same with that in which it was held Taylor could not maintain a writ of error. The consequence is, that Fox would not have been allowed his writ of error, neither therefore, should it be allowed to Bruce.
In Taylor vs. Commonwealth, it is further said that, “in-every writ of error, as well as judgment, there must be both ador and reus, ” and that, “in such a case as-that, there can be only one party. It is there also said,' that, “Beal who made the motion to appoint the clerk, should not be a party: his motion did not change the nature nor the effect of the act done by the court. It was not apio eeding against Taylor for his reinov.,1 from office, and the order made was not a judgment of amotion.” With still less propriety, can Fox’s opposition to Bruce’s motion, render it proper to sue out a writ of error against him in this case. If instead of opposing Bruce’s motion, he had assented thereto, and even made the motion in Bruce’s behalf, that could not have affected the decision of the court; it would still have been bound, without regard to that circumstance, to have ascertained from the fact whether Bruce was the officer of the commonwealth or not.
I have not thought it either necessary or proper to investigate the soundness of the contraction given by the two decisions referred to, of the acts regulating the jurisdiction of this court. According to my understanding of my duty, it is too late now for me to reinvestigate that matter. A construction twice solemnly given to a statute, by decisions at such long intervals from each other, should *460 .not be disturbed on light grounds. The construction given by those decisions, as I understand them, is that this court has jurisdiction over no judicial proceeding, except where there is properly speaking an actor, reus and jucha:. .One of those essential parties being wanting here, I must decline taking jurisdiction over this case.
I also doubt whether this be such a final order, within the meaning of the act of assembly, as that this court ought to. take cognizance of it. The action of this court tipon that order and affirming it, can give it no greater validity or efficacy than it would have without such action and affirmance. How far then was the- order of-the circuit court overruling Bruce’s motion, final? ' Did it preclude him from renewing that motion at a subsequent term? It certainly couíd have no such effect. If there had been a change of judge in the circuit court, or if the same judge at a subsequent term had changed his opinion of Bruce’s rights, he could legally and rightfully have been admitted to the exercise of the duties of the office, notwithstanding this order. I cannot recall any instance in which this court has ever taken appellate jurisdiction over any proceeding in an inferior court, where that proceeding was such that no final order or judgment was rendered, and that no order or judgment which could be rendered would be final and conclusive of the matter litigated. This court does revise decrees and orders dismissing bills and motions without prejudice; but in all such cases, if the dismissal had been absolute, it would have barred another bill or motion for the same-matter. If this view of the subject be correct and no order or judgment'rendered in this proceeding' can or will be conclusive of Bruce’s right, that of itself, constitutes an unanswerable argument, to prove that we ought not to have such jurisdiction conferred on us, and still more conclusively that we ought not to assume it. It would be an inappropriate application of the time and powers of this court, to render it the mere adviser of the circuit court. Its power should never be called into action, except where its action will conclude the matter litigated; and forever bar the same matter from *461 being again litigated in the very same mode of proceeding. if there was in existence another court of original jurisdiction, superior to that of the circuit court, with power to control it by mandamus, the motion made by Bruce, would have been a necessary incipient step, which he would have been bound to take before he could obtain a mandamus. The adjudication upon his motion could not then have been considered as final and conclusive of his right, or even as an adjudication of his right, because that of itself would preclude him from obtaining the mandamus, inasmuch as it would have been the final determination of a court of competent jurisdiction, that he had no right. Neither could a writ of error to this court have been brought in that state of case, to reverse the order overruling his motion; toras it is said in Taylor vs. Commonwealth, wherever a mandamus lies, a writ of error does not.
* But it is said, that because there is no such intermediate tribunal of superior original jurisdiction, to afiord the redress by mandamus, that therefore this remedy by writ of error should be allowed, because of the supposed anomaly there would be, if Bruce had the right, and the circuit court erred in refusing the exercise oi’ it to him. This supposed anomaly, and consequent reproach upon our institutions, is not perceived. The whole of our jurisdiction is made up oi only such matters as the legislature chooses not to restrict us from; and if it thinks proper to leave this exclusively within the arbitrium of the courts of original jurisdiction, there is no other or further cause of just complaint, than there would be if our jurisdiction were restricted to sums over oue hundred dollars. It is a matter purely within-legislative discretion. That it should be left where it is, presents to my mind an instance of no such anomalous legislation, as would be presented of anomalous adjudication, provided this writ of error is allowed. The commonwealth’s attorneys and the ordinary attorneys at law, stand with regard to the circuit courts, in the same attitude that the attorney general and the practitioners at our bar do towards this court. For *462 errors of the courts to their prejudice as officers or at” torneys, they alJ have the same mode and measure of redress, and none other.
When the legislature shall devise an appropriate remedy for the supposed defect, I will assist with pleasure in enforcing it. I am not willing to afford a cure by the adoption of a new principle of practice in this court, of wide range, the full extent of which is not foreseen.