## Newcum *vs.* Kirtley.

### ERROR TO ROCKCASTLE CIRCUIT.

MOTION.

Case 39.

January 24.

13m 515
100    23

Judge MARSHALL delivered the opinion of the court.

1. The decisions of the board contemplated by the statute for deciding contested elections, was intended to be a final decision of the contest, "so far at least as regards questions of fact touching the number and legality or illegality of votes given for the respective candidates," and the court of appeals will not reconsider such questions.

2. If one of those claiming an office (a clerkship) has, during the contest before the board whose duty it is to decide, been commissioned and qualified, a motion on the part of the person in whose favor the contest has been decided, to the court whose clerk he is to be, is the appropriate mode of getting possession of the office. (*Bruce* v. *Fox,* 1 *Dana,* 447.)

3. It was not necessary to produce a commission from the governor, to entitle the party to the office, where the statute requiring the issual of a commission had been repealed before the motion to qualify was made.

4. The board having found that N. had a majority of the legal votes cast, could not adjudge that K. was entitled to the office by adding to his poll votes not given, nor by subtracting good votes actually given.

5. When the facts stated by the board as found by them show a majority for one, the conclusion of the board that another is entitled to the office, cannot be sustained.

At the August election, 1851, in the county of Rockcastle, a clerk of the circuit court of said county being then to be elected, William H. Kirtley and Jonathan Newcum were voted for to fill that office. And Newcum having received a majority of the votes, as appearing on the poll books, the board of examiners gave him a certificate of his election, dated on the 9th of August, 1851. On the twenty-first of the same month he received, as then required by law, a commission from the governor investing him with the powers, &c., of the office of clerk in virtue of his election. And on the 20th of September, 1851, the circuit court of Rockcastle county being then in session, probably for the special purpose of admitting the clerk, (the office having as we understand been vacated by the death of the previous clerk,) Newcum presented his certificate of qualification for the office from a circuit judge, dated before the election, his certificate of election from the board of examiners for the county, and his commission from the Governor, and was, thereupon, duly admitted and sworn into office as clerk until August, 1856, and executed bond as required by law.

On the 12th of August, 1851, Kirtley notified Newcum that he would contest his right to receive the certificate and commission for the office of clerk. &c., on various grounds mentioned in the notice. Accordingly a board for determining the contest was organized under the fourth section of the seventh article of the act to regulate elections, approved March 24th, 1851, (Sess. Acts, 93,) since incorporated, with some variation, into the Revised Statutes as the fourth section of the seventh article of the chapter on elections, (p. 296–7, &c.) This board, after repeated meetings, at which the evidence offered by the parties was heard, made its final decision in favor of Kirtley on the 26th day of September, 1851; which, as will be observed, was after Newcum had been fully installed in the office.

On the second day of the March term of the Rockcastle circuit court, in the year 1852, which was the first term of said court after the decision of the board for determining the contested election was made, Kirtley moved the said court to permit him to be sworn in as clerk ; to which motion Newcum asked and was permitted to be made a defendant. And on the further hearing of the motion Kirtley produced his certificate of qualification for the office, given by a circuit judge before the election, his notice for contesting the election of Newcum, and the record of the proceedings of the board showing their organization, their several meetings and adjournments, and their final decision on the 26th of September, 1851. And Newcum, in addition to the documentary evidence above mentioned as applicable to his case, produced also the record of all the evidence adduced by both parties before the board which sat for determining the contest. Whether this mass of evidence was read by the court does not appear. But on the 6th day of March, 1852, the motion of Kirtley was sustained, and he was admitted to the office by taking the proper oaths and executing bond as required by law. From this judgment, which ousted Newcum from the office, he has appealed to this court.

Upon looking into the provisions of the statute regulating elections, and providing for the constitution of boards for determining contested elections, and regulating their proceedings and declaring the effect and consequences of their decision, we are satisfied that the very purpose of providing these boards was to prevent the ordinary tribunals of justice from being harassed, and indeed overwhelmed with the investigations, and involved in the excitements to which these cases may be expected to give rise, and that their decisions, so far at least as regards questions of fact touching the number and legality or illegality of votes given for the respective candidates, was intended to be final. We, therefore, at once decide that, upon the application of Kirtley

1. The decisions of the board contemplated by the statute for deciding contested elections, was intended to be a final decision of the contest, "so far at least as regards questions of fact touching the number and legality or illegality of votes given for the respective candidates," and the court of appeals will not reconsider such questions.

Newcum
vs.
Kirtley.

to be admitted under the decision of the board, it was incompetent to go behind the record of their proceedings and decision, to test the propriety of their judgment by the evidence on which they had acted. Under this view we discard that evidence as forming properly no part of the case before us; and have not looked into it to see whether it sustains the judgment of the board as to the facts stated in their decision. But we assume those facts to be true.

It is contended, however, that the judgment is erroneous and should be reversed on three principal grounds. 1. That Newcum being actually in office with all the regular evidences of title, he cannot be deprived of it in this summary way. But if Kirtley be legally entitled to it, his remedy is by action on the case, or by mandamus, or by writ of *quo warranto.* 2. That Kirtley having produced no commission from the governor of the commonwealth, as required by the statute which was in force at the time of the election and of the decision of the board, he had not the proper evidence of title to the office, and the court had no right to admit him to it. 3. That the judgment or decision of the board on which he relies, although it concludes in his favor, shows upon its face that he was not elected, but that Newcum had received the majority of the qualified votes actually given.

1. Upon the first of these objections we remark, that although the action on the case for the fees of an office involves the question of right, and may decide it between the parties, it is not a specific remedy for restoration or admission to the office; that the writ of *quo warranto* only questions the incumbent's right, and is not a remedy for establishing the right of another, or for admitting him to the office; and that although the writ of mandamus does afford a specific remedy, there is no tribunal or officer authorized to issue it against the circuit judge, and if it be issued to the clerk returnable to his own court it does not differ essentially from a motion in the same court, except that in the case of a mandamus a jury is to try

2. If one of those claiming an office (a clerkship) has, during the contest before the board whose duty it is to decide, been commissioned and qualified, a motion on the part of the person in whose favor the contest has been decided, to the court whose clerk he is to be, is the appropriate

NEWCUM
*vs.*
KIRTLEY.

mode of get-
ting possession
of the office.
(*Bruce* v. *Fox*,
1 *Dana*, 447.)

the issue of fact, if one be made, on the return. And as in the present case no such issue could be made, but the case depends wholly upon documentary evidence the effect of which must have been decided by the court, whatever form of remedy had been taken, no jury could have been demanded upon a mandamus. Besides a jury was not demanded, nor was any fact, pertinent to the case, proved or suggested for the trial of which an appeal to a jury would have been proper or admissible. And although the incumbent of an office not pertaining to the Rockcastle circuit court, could not by mere motion have been brought into that court for the trial of his right to it, yet as the office in question did pertain intimately to that court, as the motion for admission to it must have been made in that court, no matter what other proceedings had taken place, and as, when this motion was made by Kirtley, Newcum made himself defendant to it, and the parties proceeded to present the evidence of their respective claims in a court certainly having jurisdiction of the whole question, and Newcum made no objection to the form of the proceeding, or to the mode or time of trial, we think the objection now made to the form of the proceeding, if ever available, comes too late. The case of *Bruce* v. *Fox*, 1 *Dana*, 447, seems to be substantially a precedent in favor of the proceeding by motion in such a case as this.

2. With respect to the objection that Kirtley did not produce a commission from the governor, the court is of opinion that as he made his motion at the first term of the court at which it could have been made, and as before that time—viz: on the 27th of December, 1851—the law requiring clerks of county and circuit courts, and other officers referred to, to be commissioned, was repealed, and they were authorized to enter upon the duties of their respective offices as soon as they receive certificates of election, and qualify and enter into bond as required by law, a commission was not an essential part or indispensable evidence of Kirtley's title to the office in March,

3. It was not
necessary to
produce a com-
mission from
the governor,
to entitle the
party to the of-
fice, where the
statute requir-
ing the issual
of a commis-
sion had been
repealed before
the motion to
qualify was
made.

1852; and that whatever might have been said if it had appeared that Kirtley had applied to the Governor for a commission under the previous law, and it had been refused, as to which there is some difference of opinion, the mere presumption, if there be a presumption, that there was such application and refusal, cannot, in the absence of all proof on the subject, raise any question as to the effect of such facts, and certainly cannot operate as a bar to Kirtley's right to be admitted to the office, if on the credentials actually produced, he is legally entitled to it. This objection is therefore deemed untenable.

3. The principal question and chief difficulty in the case arises on the third objection above stated, to a proper understanding of which it is necessary to set forth briefly the substance of the final order or decision of the board to which the contested election was referred. That order states, that it appears from the poll books that Newcum had received three hundred and eighty-two and Kirtley three hundred and seventy-five votes. It then determines that one voter named, whose vote was set down for Newcum, had, in fact, voted for Kirtley. The correction of which, as it states, makes Newcum's vote three hundred and eighty one, and Kirtley's three hundred and seventy-six. It then shows that the board find that several persons, nine in number, who are named, and who voted for Newcum, were not legally entitled to vote, and immediately states, as being found by the board, "that John Griffin and Smith Reynolds were prevented from voting for Kirtley in consequence of the judges of the election at the fourth and sixth districts closing the polls before the time required by law, making eleven votes, which deducted from Newcum leave him three hundred and seventy." They then find that Newcum has successfully attacked the votes of five named persons given for Kirtley, "which (as the order or judgment says,) being deducted from Kirtley's poll, leaves him three hundred and seventy-one votes, giving him a majority of one vote, conse-

quently entitling him to the certificate of election."

As the same result would be produced by adding the two votes of Griffin and Reynolds to the poll of Kirtley as by deducting them from that of Newcum, we need not stop here to remark upon the disposition actually made of them. It is evident that leaving these two votes out of the computation, Newcum, according to the finding and decision of the board itself, had the majority by one vote, which can only be transferred to the other candidate, by deducting from the one poll or adding to the other two votes for those which were in fact not polled at all. The decision is in substance and in fact that Newcum received one more than Kirtley of the legal votes given, but that as two voters intending to vote for Kirtley were prevented from voting by the polls being closed too soon, Kirtley has the majority and is entitled to the certificate. The decision is in favor of Newcum upon the votes given, but against him on the votes not given, or because the majority would have been against him if the polls had not been closed too soon, whereby two persons were prevented from voting against him.

Had the board any right to take into the computation these two votes not given to either candidate, nor even offered to be given while the polls were open for the reception of votes, and thereby to change the majority, and the result of the election, as exhibited by a comparison of the legal votes actually given. We know of no precedent for such a proceeding in determining a contested election, and consider it as being, on principle, wholly unauthorized. The board does not find that the polls were closed too soon for any fraudulent or improper purpose. And it would seem that if the election should be at all affected by the fact that the polls at one or two districts were not kept open quite as long as they should have been, and that thereby a different result probably ensued from that which would have taken place if they had

been kept open until the proper time for closing them, the consequence should rather be that the whole election should be vacated and a new election had, than that the scale should be turned in favor of the candidate who received the minority of the actual votes, by the evidence of two or three persons that they would have voted for him if the polls had not been closed too soon. Notwithstanding their intention, they might not, in fact, have so voted or have voted at all, even if the polls had been kept open. If they had been zealous they would have been at the place of election in time. If indifferent they might finally have been diverted from their purpose. There cannot be as much certainty that they would both have voted for Kirtley if the polls had been kept open, as there is that Newcum received the actual majority of legal votes given while the polls were open. And in fine, their votes were not offered to nor taken by the officer entrusted by law with the office of receiving and recording votes. Whether there is a time appointed by law, before which the polls shall not be closed, and what should be the consequence if at one or more places of voting the polls are closed before that time, we need not and do not decide.

But the conclusion that the board could not legally take into the computation the two votes not polled, does not rest upon general reasoning alone. The eighth subsection of the first section of the seventh article of the act to regulate elections, above referred to, prescribing rules for the decision to be made by the board for determining contested elections of governor or lieutenant governor, which are by reference adopted also for the regulation of other boards provided for in the article, states three cases: 1. Where there is a tie between the candidates receiving the highest number of votes, in which case the incumbent is to retain the office. 2. Where the person returned is not duly qualified, when there shall be a new election. 3. "Where another than the person returned, shall be found to have received the highest number of legal

votes given, such other shall be adjudged to be the person elected and entitled to the office." From this last provision it seems entirely clear that unless the framers of the statute intended that votes not given should be counted against the incumbent, but not in his favor, which is inconceivable and cannot be admitted, they intended that they should not be counted at all. If Kirtley had been found to have received a majority of one of the legal votes actually given, Newcum could not have preserved his office by showing that ten, or any number of legal voters, were prevented from voting for him by reason of the polls being closed too soon and before they got to the place of election. It may be assumed as absolutely certain that the legislature did not intend to give to the contestant the advantage of counting votes not polled, and at the same time to restrict the incumbent having all the primary evidence in his favor, and evidently preferred in the first case stated, to the legal votes actually given for him. The necessary and certain import of the provision is, that the contestant shall not be adjudged to be entitled to the office unless the board find that he has received the highest number of legal votes given.

In this case the board having found expressly that Newcum the person returned and the incumbent of the office, had received the highest number of legal votes given, and that Kirtley the contestant had not received the highest number of legal votes given, were bound, unless they deemed a new election proper, to adjudge that Newcum was entitled to the office, and were prohibited by the rule laid down by the statute from adjudging that Kirtley was entitled to it. And as if aware that they could not adjudge the office to Kirtley upon a majority produced by adding to his poll the two votes not given, they strike from Newcum's poll two legal votes given to him, and which they do not show even to have been assailed. The violation of the rule prescribed to them by the statute is not however less palpable than if they had

4. The board having found that N. had a majority of the legal votes cast, could not adjudge that K. was entitled to the office by adding to his poll votes not given, nor by subtracting good votes actually given.

made up a majority for Kirtley by adding the two votes to his poll. It is, if any thing, more flagrant, because they have forced a majority by subtracting two votes from Newcum which they themselves have decided to be legal votes polled for him. Nor do they, upon the majority thus made up, venture to adjudge or assert or certify that Kirtley is elected or entitled to the office or to the certificate, but state the result of the calculation as giving him a majority of one vote, "consequently entitling him to the certificate of election."

But the alleged consequence does not follow because the facts found by the board, and stated in their judgment or decision, show conclusively that there was no such majority for Kirtley; that it was made up, in fact, by taking two votes from Newcum decided to be legal, and that Newcum received the majority of legal votes given. And if the consequence stated be regarded as a decision, or a certificate that Kirtley is, on the ground of the majority stated, entitled to the office, it is unauthorized and illegal, because upon the facts found and stated by the board Kirtley had not a majority of the legal votes given; and his title could not be made out either by adding to his votes others not given, or by taking from Newcum votes admitted to be legal and actually given for him. If the board had a right to do anything with the two votes not given, surely it was to have added them to the poll of Kirtley. But although this would have made a majority, it would not, as we have seen, have entitled Kirtley to the office. And they might just as well, and with equal effect, have made the majority in correcting the vote improperly set down for Newcum when it was given for Kirtley, by taking two from Newcum and adding two to Kirtley on that account, as to have made it as they have done, by subtracting eleven instead of nine votes from Newcum, when from their own showing nine only should have been subtracted. Or they might as well, after finding that Newcum had a majority of one, of

5. When the facts stated by the board as found by them show a majority for one, the conclusion of the board that another is entitled to the office, cannot be sustained.

the legal votes given, have gone on to say, "and subtracting two legal votes from Newcum, gives Kirtley a majority of one vote, consequently entitling him to the certificate of election." The subtraction of the two votes for a reason not only insufficient but actually excluded by statute from all influence in the calculation, is just as illegal as the subtraction of them without any reason at all.

The case then, as appearing upon the face of the document exhibited by Kirtley to establish his right to the office, is substantially this, that the board finding that Newcum has a majority of one of all the legal votes given, illegally subtract from his poll two of the legal votes given for him, and thus produce an apparent majority of one vote for Kirtley, consequently, as they say, entitling him to the certificate. And the question is, whether the court to which this document was presented as evidence of Kirtley's right to be sworn in as its clerk, was bound by this argumentative conclusion, contradicted by the facts established by the document itself, and manifestly based upon an illegal and arbitrary calculation. We say that this conclusion is no more authoritative when based upon a palpable violation of the law of the land directly applicable to the subject, and about which there can be no mistake or difference of opinion, than if it had been based upon a palpable violation of the plainest rules of vulgar arithmetic; that the document being offered to the court as evidence of the right involved in the motion, and for its consideration in determining the right, it was the right and duty of the court to consider the whole document, and to determine the right as upon the whole document, and the law arising thereon, as it appeared to be for one or the other party; and that if the conclusion had been expressed in the most formal terms, that "consequently (that is in consequence of the majority assumed or produced in the mode actually pursued,) it was adjudged by the board that Kirtley was duly elected and was entitled to the office of clerk," still, as the same

document disclosed the process by which this conclu-sion was arrived at, and showed conclusively that it was in direct contradiction of the facts found, and a palpable violation of the law applicable to them, it was the right and duty of the court to disregard the concluding judgment as illegal and void, and conse-quently insufficient to entitle Kirtley to the office. As upon the entire document it plainly appears that the board itself found that Newcum had the majority of legal votes given, the law, unless the election were vacated, determines that Newcum was elected, and the conclusion or judgment of the board to the con-trary, if they have so adjudged, is a nullity. We feel bound, therefore, to decide that the court erred in admitting Kirtley to the office, and in allowing him to be sworn in and to execute bond as clerk.

Wherefore the order and judgment sustaining Kirt-ley's motion to be sworn in as clerk, and admitting him to the office, is reversed, and the cause is re-manded with directions to overrule said motion.

*Harlan* and *Farrow*, for appellant; *Turner* and *Monroe*, for appellee.