## City of Covington, Ex Parte.

(Decided June 5, 1917.)

### Appeal from Kenton Circuit Court.

1. Municipal Corporations—Ordinances—Validity.—The validity or invalidity of city ordinances may be tried by an *ex parte* proceeding, as provided by section 3063 of the Kentucky statutes, but this method of proceeding cannot be employed to test the validity of acts done under an ordinance such as the validity of the ordering of an election, the issuing of bonds, &c.

2. Municipal Corporations—Ordinances.—In the *ex parte* proceeding provided by that section of the statute only such questions may be presented as pertain to the subject matter of the ordinance and the legality of its passage and publication.

3. Municipal Corporations—Issue of Bonds—Ordinance Providing Election.—Where an election was held for the purpose of issuing bonds to fund an indebtedness of the city, which election was in pursuance of an ordinance previously passed calling it and at which the creation of the indebtedness was authorized by the legal number of votes, and another ordinance was passed directing the issuing of bonds and the levying of taxes to meet their payment, the validity of the bonds, including the validity of the election authorizing their issue, may not be tried or tested by the ex parte proceeding, but must be done in a proceeding between proper parties.

FREDERICK W. SCHMITZ for City of Covington.

OPINION OF THE COURT BY JUDGE THOMAS—Reversing.

This is an *ex parte* proceeding filed by the city of Covington, a city of the second class, in the circuit court of Kenton county for the purpose of obtaining, as stated

in the prayer, "judgment determining the validity or invalidity of Commissioners' Ordinances No. 567 and No. 594, passed by the Board of Commissioners of the city of Covington on September 21, 1916, and December 8, 1916, respectively, and of the proposed bond issue authorized by the voters of the city of Covington at the election held pursuant to the provisions of said Ordinance No. 567, and ordered to be sold under the provisions of said Ordinance No. 594; and it further prays for all proper and equitable relief."

From the petition it appears that beginning in the year 1907, and for several years thereafter, the current and necessary expenditures of the city exceeded the income levied and collected for those years, and that a deficit occurred in each of them until the aggregate sum of the deficits was more than $180,000.00, which had been paid with the proceeds of a loan obtained from a bank at Cleveland, Ohio, evidenced by the city's promissory note. With the view of funding this indebtedness, or at least $140,000.00 of it, the Board of Commissioners, on September 21, 1916, enacted an ordinance (No. 567) calling for an election to be held in the city on November 7, 1916, for the purpose of determining whether the city would issue its bonds for an aggregate sum of $140,000.00, they to run for a period of 40 years, and to bear a rate of interest not to exceed four per cent. per annum.

On the day specified the election was held, and there were cast in favor of the bond issue 5,421 votes, and against it 1,809 votes, more than two-thirds of the votes cast being in favor of the proposition. The commissioners passed another ordinance (No. 594) on December 8, 1916, providing for the issuing of bonds and the levying of a tax for the purpose of creating a fund with which to pay the interest and to finally discharge the bonds.

The chief points sought to be presented by the petition are: (1) whether under the provisions of sections 157 and 158 of the constitution the proposed indebtedness may be legally created even by an election held for that purpose; and (2) whether the ordinance No. 567 calling for the election and the notice of the election were properly published and advertised as required by law. After filing its petition the petitioner demurred to it, which was overruled, followed by a judgment upholding the validity of the two ordinances as well as the election called and held under the first one, and from that judgment the city prosecutes this appeal.

The questions which might have been raised in a suit *inter partes* brought for the same purpose are extensively discussed in the brief of counsel for the city, but we find what we deem an insurmountable obstacle to our considering them in this character of proceeding. Section 3063 of the Kentucky Statutes, being a part of the charter of cities of the second class, to which Covington belongs, in part provides:

"The validity of city ordinances and by-laws may be tried by writ of prohibition from the circuit court, with right of appeal to the Court of Appeals, or upon *ex parte* petition by the city, or any *bona fide* citizen and resident thereof, to the circuit court, with right of appeal."

The remedy therein provided for testing the validity of *ordinances* and *by-laws* by *ex parte* petition has been upheld by this court in several cases, among which are Shoemaker v. Hodge, 111 Ky. 463; City of Lexington on Appeal, 96 Ky. 258, and City of Newport v. Glazier, 175 Ky. 608.

An *ex parte* proceeding is defined in 18 Cyc. 1500, to be "A proceeding at the instance and for the benefit of one party only, and without notice to or contestation by any persons adversely interested."

The definition given in 12 A. & E. Encyclo. of Law, 2nd Edition, Vol. 12, 392, is: "A term applied to proceedings in an action had on the application or at the instance of one side only, and without notice or opportunity to oppose given to the other side, and to proceedings in which there is no adverse party."

Substantially the same definition is given in Black's Law Dictionary.

It will already have been observed that the relief sought by the present proceeding is much more than that of testing the validity of the two *ordinances* in question. In fact, the prayer of the petition from which we have quoted calls upon the court to pass upon and submits to it the validity or invalidity of *the proposed bond issue* authorized by the voters of the city at the election held pursuant to the provisions of the first ordinance mentioned. In order to do this it is absolutely incumbent upon the court to investigate facts *de hors* the two ordinances, for only two questions are presented when the validity or invalidity only of an ordinance is to be determined, they being whether the legislative body passing them could legally deal with the subject matter in the manner attempted, and, if so, whether the ordinance

had been properly enacted. This latter point would include the formalities gone through with in voting upon the ordinance, as well as subsequent facts, such as proper publication thereof. No other questions are presented upon a proceeding purely for the purpose of testing the validity or invalidity of an *ordinance*.

Questions as to the regularity or legality of proceedings which may have been had under the ordinance after it shall have been passed are entirely separate and distinct from those affecting the legality of the ordinance. In the present case, in order to determine the validity of the bonds in question, we are not only called upon to decide upon the validity of the ordinance, but are also called upon to ascertain and determine whether the accumulated deficits, to meet which the bonds are proposed to be issued, were such as the city can legally assume, and whether to now assume them would create a debt beyond the limits provided by section 158 of the constitution, and perhaps other facts totally disconnected with, and having no relevancy whatever to, the validity of the ordinances or either of them.

In order to ascertain whether the deficits, the accumulations of which are proposed to be funded by the proceeds of the bonds, may be lawfully assumed by the city it becomes necessary to determine whether, in each of the years where there was a deficit, the city could have legally provided, without an election, for the total amount of the funds which it expended, plus the deficit. From this it will clearly appear that there is much more presented here than the mere question of the validity or the invalidity of either of the ordinances.

At common law it was essential to a judicial determination that there be three persons, the actor, the *reus* and the *judex*. Without both of the first two there can be no contest nor any opposition to any of the wishes of the actor. This was held by this court in the case of Piatt v. Allaway, 2nd Bibb 554, wherein this court says:

"In every judicial case there are regularly three persons, the actor, the *reus* and *judex,* and it is essential to such a case that it should depend upon fixed and established rules."

This doctrine was referred to and approved in the case of Taylor v. Commonwealth, 3 J. J. M. 401, and is also referred to with approval, except as to cases where it did not apply, in the case of Bruce v. Fox, 1 Dana, 447.

It is proposed here, by *ex parte* proceeding only, to fasten upon future generations in the city of Covington for the next forty years a large indebtedness. The parties who are as much or more interested than any others are the taxpayers residing or owning property in the city throughout that time. They are neither parties to this proceeding, nor are they in any manner represented. The law furnishes many remedies whereby the validity of the bonds may be tested in a suit *inter partes,* one of whom may lawfully appear as a representative of the taxpayers in a contesting capacity. It will therefore be seen that the questions involved are important and should not be determined in such one-sided proceeding only unless there is clear authority for it.

An *ex parte* proceeding is under the management, control and direction of one side only to the controversy. If those managing that side should be favorable to the proposition, great inducements would be offered to suppress facts vitally affecting the questions involved. In this manner intolerable burdens might possibly be imposed upon the citizen, when if the facts had been presented he might have been relieved of them.

It is inimical to the policy of the law that public questions like this, of such far-reaching consequences, and affecting so many people, shall be determined except upon a fair and full hearing in a proceeding to which everyone interested is a party. An *ex parte* proceeding is a departure from the rule of the common law above alluded to, and it should not be applied except in cases clearly provided for.

The case of the City of Lexington on Appeal, *supra,* might at first blush appear to be in conflict with these views, but an examination of it will show that the question now being discussed was neither presented nor referred to by the court, and, furthermore, that there was no constitutional question which might arise out of the facts extrinsic to the ordinance, since the indebtedness there under consideration was contracted and created before the adoption of our present constitution. It will, therefore, be seen that there is nothing in that case in conflict with what we have said. We conclude, then, that the provisions of section 3063 of the statute, *supra,* do not authorize the filing of an *ex parte* proceeding to obtain the relief here sought, and that the demurrer to the petition should have been sustained.

Wherefore, the judgment is reversed with directions to sustain the demurrer filed to the petition, and to dismiss it, but without prejudice to the bringing of a proper *inter partes* suit to obtain the same relief.