# Ex Parte City of Ashland.

(Decided Nov. 15, 1934.)

L. C. FIELDER and R. CAMPBELL VAN SANT for appellant.

OPINION OF THE COURT BY MORRIS, COMMISSIONER—Reversing.

Ashland, a city of the second class operating under the commission form of government, filed an ex parte petition in the Boyd circuit court seeking to have declared valid Ordinance No. 37, as amended by Ordinance No. 52, adopted by the city commissioners in 1934. The city was the sole party to the action. On a hearing in the lower court, the ordinance as amended was declared valid, and the matter comes up on appeal by the city.

The original ordinance provided substantially that all persons upon whom jail sentences had been inflicted in the police court, as a part of the punishment, and all persons not paying or replevying inflicted fines or costs, should serve sentence and pay the fine and costs at hard labor for ten hours each day, at the rate of one day for each dollar of fine and costs. Male persons were to be put to labor on streets, alleys, or other public works under the direction of the city manager or director of public works.

It was enacted that any prisoner refusing to work or obey the order of a custodian "should be confined in the city jail until he is willing to work and/or obey the orders of such custodian, not to exceed, however, twelve months, and no credit shall be given on any such sentence or fine, or costs, unless and until such person shall

have performed such work, when and if ordered to do so."

Ordinance No. 52 amended section 1 of No. 37, leaving other sections as originally enacted. The amendment, in so far as is observed, had the effect of making the ordinance applicable alone to male persons convicted of crime, and changing the allowance for labor to $2 for each day of hard labor.

The petition sets out step by step the introduction, passage, advertisement, and adoption of both ordinances, all of which no doubt, were taken in strict conformity to the law. It is also alleged that the lawmaking body was vested with plenary power to pass the ordinance, which may also be taken as true. However, it is noted that in the petition it is specifically alleged:

"Your petitioner further states that some of the prisoners who have been duly convicted in the police court of the City of Ashland and sentenced to hard labor under the provisions of the foregoing ordinances have refused to work."

Again in petitioner's motion to docket and advance the case one of the reasons given for such action is that "prisoners convicted under the ordinance have refused to work," and in the affidavit of the city jailer filed in support of the petition it is stated "that some of the prisoners who have been convicted in the police court of Ashland and sentenced to hard labor under the ordinances have refused to work, although they have been requested to do so."

In the brief filed on behalf of the city, the court is asked to conclude upon the following propositions:

(1) That the city of Ashland had power to pass the ordinance in question; (2) the ordinance was enacted in due form of law; (3) the police court of Ashland has jurisdiction to enforce the ordinance as amended; and (4) that the city has the right to impose, enforce, and collect the fines, forfeitures, and penalties for a breach of the provisions of the ordinance.

Reduced to narrow limits, the question propounded to the court is whether or not the officer having charge of prisoners convicted of crime in the Ashland police court may under the ordinance compel them to serve their sentences at hard labor.

Taking the sum and substance of the questions presented, it will be seen in a moment that a decision thereof by this court would deprive interested parties of an inalienable right; a right guaranteed by our own and the Federal Constitution, since by the documents mentioned there is vouchsafed to every person an opportunity to be heard, so that he may not be deprived of life, liberty, or property without reasonable notice and opportunity to present his claims according to the orderly and well-defined rules of law and procedure. To decide, in the absence of the objector, the questions as to whether the city had the right to impose penalties under the ordinance, or whether the Ashland police court has the jurisdiction to enforce the penalties prescribed in the ordinance, would be to fly squarely into the face of the safeguards set up in our fundamental laws.

Strip the proposal of all question save those with regard to the due and legal passage of the ordinance and the power of the commissioners to pass and adopt it, while the inquiry would thus be narrowed, still the court could not in this ex parte proceeding test these two questions, because in so doing the rights and liberties of persons would be affected, without any sort of opportunity for them to be heard.

We are well aware of the provisions of section 3063, Kentucky Statutes, which authorizes an ex parte proceeding to test the validity of an ordinance, and which section is the claimed sustaining authority in this proceeding, and likewise of the fact that under the authority therein extended a considerable number of cases have been presented to and decided by, this court, not a great number of them however purely ex parte; many called ex parte, upon inspection, appearing to be in reality inter partes actions, some in the form of writs of prohibition, and others where a taxpayer, suing for himself and others similarly situated, sought to have rights as against the municipality determined, or vice versa. The case of City of Newport v. Glazier, 175 Ky. 608, 194 S. W. 771, is one example, and while it was begun as an ex parte proceeding, it appears that there were in fact contesting parties to the action and an issue raised by proper pleading.

In all the cases ex parte, so called ex parte, or otherwise, brought by sanction of section 3063, Kentucky Statutes, under which this proceeding was instituted, it

has been uniformly held that no questions could be determined, save and except as to the power to adopt, and whether or not the ordinance adopted was structurally sound. City of Newport v. Glazier, supra; Home Const. Co. v. Duncan, 111 Ky. 914, 64 S. W. 997; Ex parte City of Covington, 176 Ky. 140, 195 S. W. 439, and others.

The ordinance taken alone discloses unquestionable rights of those who would be directly affected by its enforcement, and if the court should undertake to decide ex parte, and decide affirmatively, no one would be bound by such decision. Certainly not those prisoners who are serving sentences in jail or who have failed to pay or replevy, and refuse to labor; nor yet one who in the future might be sentenced to hard labor under the ordinance. They, each, and any of them undoubtedly have, and would have, the right to a hearing on the questions of whether or not the commissioners had the power to, and did in a strictly lawful manner, pass the ordinances. This is said not with the slightest inference that the petition does not truly state every fact in regard to the power to pass, and the legal passage of the ordinances; however, admitting as true the two propositions, the all-important necessity of giving the interested party his day in court is not thus obviated.

The court might conclude this case by a consideration only of what may be termed the extraneous questions, as was done in the two cases which are now referred to, the first of which is Ex parte City of Paducah, 197 Ky. 310, 247 S. W. 3, 4. There the city by ex parte proceeding undertook to have determined the question as to whether or not a strip of land owned in fee by the Paducah Railway Company in the center of Jefferson street was abutting property within the meaning of the charter provisions of the city. The court in upholding an order of the lower court dismissing the petition said:

"Analyzing the allegations of the petition, aided as we are by the arguments in the brief on file for the city, it seems clear that the real purpose of the proceeding is not to have adjudged the validity or invalidity of an ordinance, but is in fact an effort, under the guise of having the validity of an ordinance tested, to have the charter for cities of the second class interpreted. Whether the 20-foot strip is abutting property within the meaning of the charter is the only question involved, and there is no

authority for an ex parte proceeding to determine that question.''

This decision could well have been put on the ground that the action sought to determine property rights, and that, before there could be such determination, the owner of the property should have been given a chance to be heard.

The second case is Ex parte City of Covington, 176 Ky. 140, 195 S. W. 439, 440. In that case it was sought to have determined by ex parte proceeding the validity of a bond issue theretofore authorized by the voters of the city. The court had no difficulty in gathering from that record, as we have had none here, that the matter to be passed upon was not confined to the questions of power to pass, and the proper passage of the ordinance there under discussion, which if affirmatively determined, as indicated in the opinion, would have fastened an indebtedness upon the citizens of Covington, without any of them having had a day in court. The court in that case defined an ex parte proceeding to be:

''A proceeding at the instance and for the benefit of one party only, and without notice to or contestation by any person adversely interested.'' 18 Cyc. 1500. ''A term applied to proceedings in an action had on the application or at the instance of one side only, and without notice or opportunity to oppose given to the other side, and to proceedings in which there is no adverse party.'' 12 A. & E. Encyc. Law (2d Ed.) vol. 12, p. 392.

The court said further in its opinion which ordered the petition dismissed, having in mind the outstanding question presented:

''It is proposed here, by ex parte proceeding only, to fasten upon future generations in the city of Covington for the next 40 years a large indebtedness. The parties who are as much or more interested than any others are the taxpayers residing or owning property in the city throughout that time. They are neither parties to this proceeding, nor are they in any manner represented. The law furnishes many remedies whereby the validity of the bonds may be tested in a suit inter partes, one of whom may lawfully appear as a representative of the taxpayers in a contesting capacity. It will therefore

·be seen that the questions involved are important and should not be .determined in such one-sided proceeding only unless there is clear authority for it."

However, it is thought proper here to go further and to pitch the decision of this case squarely on the proper construction and true meaning of a questionable portion of section 3063, Kentucky Statutes.

The City of Covington Case, 176 Ky. 140, 195 S. W. 439, impliedly, at least, approves the right to contest the validity of the passage of an ordinance, including the authority therefor, by purely ex parte proceeding filed either by the city or any citizen and resident therein. But it denied the right as so given by section 3063, supra, of such ex parte petitioner to obtain a construction of the ordinance or an. approval by the court of the purposes intended· to be accomplished by it. The latter was really the only question involved in the City of Covington Case, and the implied approval and indorsement of such a proceeding for the purposes and to the extent therein·indicated may be appropriately classified as dictum, since the question discussed in so much of the approving portion of the opinion was not before, or discussed by, the court.

Furthermore, the cases referred to in that opinion, as approving what we have concluded was its. dictum (Shoemaker v. Hodge, 111 Ky. 436, 63 S. W. 979, and City of Newport v. Glazier, 175 Ky. 608, 194 S. W. 771), were not ex parte proceedings, although they may have originally been commenced as such they were.converted into inter partes actions before the judgments appealed from were entered. With the elimination from the City of Covington Case the dictum to which we have referred, there yet remain two other opinions rendered prior thereto, and not noticed in that case, which, as the thought may be expressed, silently approve that portion of section 3063, giving the right to contest the validity of city ordinances by "ex parte petition by the city, or any bona fide citizen and resident thereof," with the right of appeal to the Court of Appeals. Those cases are In re City of Newport, 113 S. W. 467 (not elsewhere reported), and Ex parte City of Newport, 141 Ky. 329, 132 S. W. 580, 37 L. R. A. (N. S.) 1034, Ann. Cas. 1912C, 447. If there are other similar ones, they have not been cited nor have we been able to locate them. Nowhere in either of those opinions does it appear that the question

of the validity of the quoted portion of section 3063, supra, was presented or argued to the court, nor did the court attempt in either of those opinions to pass upon the validity of that excerpt, but treated it, as did also the attorney for the ex parte litigant, as valid, and upon that basis alone jurisdiction was taken of the questions presented, and the inquiry embodied in the ex parte application was answered. But upon a careful consideration of this question in this case, in the light of fundamental principles especially emphasized in the City of Covington Case, we are entirely convinced that the cases, supra, in 113 S. W. 467, and 141 Ky. 329, 132 S. W. 580, and others of a similar nature, if there be any, should no longer be followed.

We so conclude, not only for the reasons stated in the City of Covington Case, that to hold otherwise, and for the court to allow the procedure approved in those opinions to continue to prevail, would put it in the power of only one litigant in court proceedings involving the validity of city ordinances affecting the rights of others to obtain a judicial determination of those rights without any of the parties so affected being represented or heard either in person or by proper substitutional representation, and which, if followed, would violate every principle of just, fair, and equitable judicial investigation and determination. In so concluding we do not feel that we obstruct the path of an objecting litigant whereby he may travel through the courts to test the validity of a city ordinance. He possesses all of the common-law routes open to him before the enactment of the statutes, supra, and it expressly gave to him the additional remedy of applying for a writ of prohibition. Since then our Legislature has enacted what is known as the "Declaratory Judgment" statute (Civil Code Practice sec. 639a-1 et seq.), whereby statutes, ordinances, contracts, or other written documents may be construed or their validity determined by a proceeding brought under its provisions, the practice of which is simple and open to all persons who manifest any interest in the subject-matter.

With all such remedies available and in each of which provision is made for the entry of adverse parties whereby the investigation may proceed in full accord with constitutional provisions. we conclude that the remedies and rights of any dissatisfied or complaining interested citizen are amply provided and fully protected.

Many times litigation in courts assumes the form of ex parte applications of which the court takes jurisdiction and determines the question involved, regardless of the form of the procedure by which the litigants come into court, as in cases where parties interested in the controversy, join in an ex parte presentation of the controversy, either individually or by a representative of a particularly interested class. But, although such a proceeding assumes the ex parte form, it is in substance and effect one where all those interested in the determination of the questions involved are in court, and it may lawfully deal with their rights, notwithstanding they are presented in joint ex parte form. However, there is a wide distinction between that class of ex parte hearings and those of the nature and character here involved, and which were involved in the cases, supra, which we have disapproved.

Having thus expressed our views, there is no course open other than to reverse the judgment of the lower court, with directions to set the judgment aside and to dismiss the proceeding.

Judgment reversed.