## York et al. v. Chesapeake & Ohio Railroad Company et al.

(Decided June 12, 1931.)

W. D. O'NEAL for appellants.

BROWNING & DAVIS for appellees.

OPINION OF THE COURT BY JUDGE REES.—Affirming.

On March 13, 1929, the board of council of the city of Catlettsburg adopted two ordinances granting certain rights, privileges, and franchises to the Chesapeake & Ohio Railway Company, and providing for the opening, closing, and alteration of certain streets in the city. The appellee's line of railway extends through the city of Catlettsburg from the point where it crosses the Big Sandy river on the east to the boundary line between the cities of Catlettsburg and Ashland on the west. The greater part of the city of Catlettsburg, including the business district, lies north of the railway company's right of way and between it and the Ohio river. Just south of the railroad are the river hills. At the base and on the slopes of these hills are a number of residences. Probably 600 or 700 people live south of the railroad.

Prior to March 13, 1929, the railroad crossed at grade a number of streets and alleys extending from the hills on the south toward the Ohio river on the north. Many of these grade crossings were dangerous, and during the past several years a great number of accidents had occurred at the crossings, resulting in a number of

deaths. The most important streets crossed by the railroad. which was double tracked, were Center street, Twenty-First, Twenty-Second, Twenty-Third, Twenty-Fifth, and Twenty-Eighth streets. The Center street crossing was on a heavily traveled transcontinental highway known as the Midland Trail, or U. S. 60. In addition to the hazardous character of the grade crossings they were particularly objectionable because of delays to traffic occasioned by the frequent passing of long heavily loaded freight trains. The railway company was hampered in the prompt dispatch through the city of its trains because of unnecessary curves and grades and lack of requisite trackage.

For the purpose of remedying these conditions, costly and inconvenient both to the public and itself, the railway company in the early part of 1929 submitted a plan to the city by which it proposed to acquire additional rights of way sufficient for the construction of four tracks and for the elimination of curves and grades, provided various grade crossings should be closed in return for the construction by the railway company of certain undergrade crossings. Numerous public meetings were held at which the plan was discussed and objections by the city officials and citizens were considered. The plan was modified and changed from time to time, ultimately resulting in the one approved in the ordinances above referred to. The ordinances, in substance, granted the railway company the right to maintain and operate a four-track line of railway through the city of Catlettsburg along the route designated by the company and provided that various grade crossings should be closed. In return the railway company was required to construct an undergrade crossing for the street railroad and vehicular and pedestrian travel at the Center street crossing in place of the existing grade crossing, a pedestrian and vehicular undergrade crossing immediately east of Twenty-Third street, and pedestrian underpasses at Twenty-First, Twenty-Fifth, and Twenty-Eighth streets. There was then in existence an undergrade crossing at Louisa street just east of Thirtieth street. The railway company was also required to construct approximately 5,000 feet of new concrete streets and resurface approximately 1,800 feet of Broadway, a street paralleling the railroad on the north, and to make other improvements and changes. The principal street

it was required to construct was a new street immediately south of and parallel to its right of way and extending from Twenty-First street on the west to Louisa street undergrade crossing on the east. This gives the territory south of the railroad a through east and west street, which it had not theretofore had, and affords to the residents of that territory access to the safe undergrade crossings at Louisa street and Twenty-Third street. A few of the residents of this territory are compelled to travel a slightly greater distance in order to reach the business district of the city, but any disadvantage in this respect is offset by the advantages resulting from the improved streets and the safety of the undergrade crossings.

On May 8, 1929, J. M. York and Jerenka York, citizens and taxpayers of the city of Catlettsburg, brought this action against the Chesapeake & Ohio Railway Company, the mayor and members of the city council, and the city, to have the ordinances of March 13, 1929, declared void and to enjoin permanently the closing of the streets named therein. Subsequently the name of Jerenka York, on her motion, was stricken from the petition. Later W. A. Patton and seven other citizens filed an intervening petition, and they were made parties plaintiff. The intervening petition was filed on February 22, 1930, after the work had been completed, and a mandatory injunction against the railway company and its codefendants was prayed for, requiring the defendants to remove the fills and obstructions from the streets at the crossings described in the petition and to restore these streets to their level and grade that existed at the time of the filing of the original petition.

When the suit was filed, the railway company had spent approximately $500,000 in the purchase of rights of way and other preliminary work. No bond was executed, and no temporary injunction was sought. The work was substantially completed during the year 1929 at a cost to the railway company of approximately $1,500,000. The petition, as later amended, alleged, in substance, that the closing of the streets, the construction of the underpasses, and other changes authorized and provided for in the ordinances in question would be detrimental and inconvenient to the citizens and taxpayers of the city of Catlettsburg, and that the purchase of real estate by the railway company for additional

right of way would result in a loss to the city of revenue from taxes. It further alleged that the passage of the ordinances was procured by the corrupt use of money by the railway company, that certain named members of the city council were financially interested in the passage of the ordinances, and that one councilman was an employee of the railway company.

A large amount of proof was taken, and, upon submission of the case, the lower court entered a judgment dismissing plaintiff's petition as amended. Plaintiffs appeal.

Appellants argue on this appeal that the ordinances of March 13, 1929, are invalid for the reasons set out in their pleadings, and that therefore the lower court erred in refusing to grant a mandatory injunction requiring the removal from the streets of the obstructions complained of and the restoration of the streets and street crossings to their original condition. A careful reading of the record fails to convince us that the evidence shows the passage of the ordinances was procured by the use of improper or corrupt methods on the part of the railway company or that any member of the council was actuated by ulterior or improper motives in voting for the passage of the ordinances or had such a financial interest in their passage as would invalidate them. In view of our conclusion, however, that plaintiffs have failed to establish their right to maintain this suit, we deem it unnecessary to consider the grounds urged by them for a reversal.

The appellants sued on behalf of themselves and all other citizens and taxpayers of the city. The theory of the petition as amended is that the closing of the streets and other changes provided for by the ordinances and later put into effect, the ordinances being invalid, constitute a public nuisance or wrong with resulting injury to all citizens and taxpayers of the city, including the plaintiffs. There is neither allegation nor proof that the plaintiffs will suffer any injury distinct from that to the general public. None of them owns property abutting on the streets in question, ingress to and egress from which have been affected by the alleged obstructions. The most that is alleged in this respect is that "the real estate owned by these plaintiffs is abutting on the streets connected with the streets proposed in said ordinances to be closed." This much no doubt could be

truthfully alleged as to substantially all the property in the city. The clearly established rule in this jurisdiction is that a private citizen is not entitled to injunctive relief to abate a nuisance in a street, such as is here charged to exist, unless he can show an injury distinct from that suffered by the general public. Lee v. Macht, 235 Ky. 509, 31 S. W. (2d) 906; Illinois Central Railway Company v. Covington, 211 Ky. 825, 278 S. W. 109; Husband v. Cotton, 171 Ky. 177, 188 S. W. 380, L. R. A. 1917A, 1150, and cases therein cited.

In an obiter dictum in the opinion in Maxwell v. Fayette National Bank of Lexington, 186 Ky. 625, 217 S. W. 690, it was stated that an exception to this rule is recognized where the entire street is appropriated, but in the cases cited in support of that statement the plaintiffs had sustained injuries not common to the public. The rule is well established that the owner of property abutting on a street is the only one entitled to damages for its closing, and he cannot prevent the proper authorities from closing the street where it is made to appear that the closing is in the interest of the public or necessary for a public purpose. Davis v. City of Paducah, 213 Ky. 407, 281 S. W. 158; Henderson Elevator Company v. City of Henderson, 187 Ky. 453, 219 S. W. 809, 18 A. L. R. 983.

In the Davis Case, a property owner sought to recover damages for the closing of a street upon which his property did not abut, and, in denying his right to maintain the action, it was said:

"Davis' property abuts on Second street. No part of his property touches the street to be closed. The city of Paducah contains thousands of lots and miles of streets. Every lot owner in the city has, of course, some interest in the use of all of the streets of the city. This use as to streets upon which his property does not abut he enjoys in common with the other lot owners, and the public generally, but as to streets upon which his property abuts he, in addition to the use in common with the public, enjoys a special use; it is his means of ingress and egress.

"We held in the case of Henderson v. City of Henderson, supra, that the owner of property abutting on a street, that it is proposed shall be closed, is a proper party to the proceedings to close it, and is entitled to claim damages for the closing,

as he enjoys a special use of that street; but if the contention of Davis were sound, and if every one, who might object to the closing of a street because of the use he enjoys in the street in common with other lot owners of the city, is a necessary party to the closing of it, and is entitled to claim damages, then it would be well-nigh, if not absolutely, impossible to close a street at all. If the street proposed to be closed were an unused street in some remote part of the city, the fallacy of his claim would become at once apparent; and yet such a case differs only in degree, and not in kind, from the contention Davis is making here. Davis may have occasion to use this street oftener than others because of its proximity to his property, and for that reason he may suffer more inconvenience than others, but that is a difference in degree, and not in kind. A line must be drawn somewhere, and in this state it has been drawn, and owners of nonabutting property are not necessary parties to an action to close a street and cannot recover damages for its closing.''

Whether, in the improbable event of the obstruction or closing of a street, the use of which is necessary to the welfare of all the citizens of the city, and the refusal or failure of owners of abutting property or the city officials to take action to abate the nuisance, a suit by a citizen and taxpayer, though not the owner of abutting property, under a proper showing, could be maintained, need not be determined, since the record in this case presents no such state of facts. The improvements and changes that have been made are benficial rather than deterimental to the city as a whole, and the property owners who were specially injured by the changes made are not here complaining.

Whether the ordinances which appellants seek to have declared invalid be treated as legislative or contractual in their nature, appellants have no standing whereby they may attack their validity. Appellants' personal and property rights have not been affected. Before a taxpayer can attack the validity of an ordinance, he must show a direct interference with his rights. Bradford v. Jones, 142 Ky. 820, 135 S. W. 290; Wells v. Mt. Olivet, 126 Ky. 131, 102 S. W. 1182, 31 Ky. Law Rep. 576, 11 L. R. A. (N. S.) 1080. A taxpayer, of course, may

maintain an action to enjoin the illegal expenditure of money by a municipality, and may test in a proper proceeding the validity of an ordinance involving the expenditure of money, or providing for the collection of a tax which he deems illegal. Here the consummation of the acts authorized by the ordinance will not increase appellants' burden of taxation. No payment of money by the city was involved.

The city of Catlettsburg is named as one of the appellants in the statement of appeal, and a motion has been filed to strike from the record its name as an appellant. The city was originally made a defendant, and for nearly two years, and until the chancellor orally announced his decision in the case, filed no pleading. On November 29, 1930, by agreement of the parties, the case was submitted for judgment. On February 7, 1931, after the chancellor had orally announced his decision, a motion was filed on behalf of the city moving the court that it be given a reasonable time in which to prepare and file an answer and cross-petition setting up its claim to damages caused by the obstructions in the streets described in the petition and intervening petition. An order was entered giving the city until February 14 to prepare and tender its answer and cross petition, but no pleading was tendered, and the judgment dismissing the petition as amended was entered on February 23, 1931, and the plaintiffs were granted an appeal to this court. On February 26, 1931, a pleading styled, "Answer and Cross Petition of the City of Catlettsburg," was tendered for filing. The pleading was signed by the attorney for the plaintiffs, and was verified by E. W. Bruns, a member of the city council, and who, it appears was the acting mayor of the city during the absence of the mayor. The pleading was not made a part of the record. Under the circumstances, the city is not a proper party appellant, and the motion to strike its name as an appellant is sustained.

Being of the opinion that the chancellor properly dismissed the petition as amended, the judgment is affirmed.