## HARTWELL IRON WORKS v. MISSOURI–KANSAS–TEXAS R. CO. OF TEXAS.

### No. 9738.

Court of Civil Appeals of Texas. Galveston.
Dec. 13, 1932.

Rehearing Denied Feb. 2, 1933.

E. R. Campbell and Campbell, Myer & Foster, all of Houston, for appellant.

Jas. L. Shepherd, Jr., and S. H. German, both of Houston, J. M. Chambers, of Dallas, Baker, Botts, Andrews & Wharton, of Houston, and Charles C. Huff, of Dallas, for appellee.

LANE, J.

Hartwell Iron Works brought this suit against the city of Houston and the Missouri-Kansas-Texas Railroad Company of Texas, herein referred to as M., K. & T. Company, praying for an injunction requiring the opening of Bramble, Lyle, and Runnels streets in the city of Houston, which had been ordered closed by the city of Houston, and which had thereafter been closed by the M., K. & T. Company. Thereafter the plaintiff dismissed the suit against the city, and an amended petition was filed praying judgment against the M., K. & T. Company for injunction as in the original petition, and in the alternative for damages to plaintiff's land, alleging that such land had been decreased in value by the closing of said streets. It alleged that its land abutted on the streets named, and by reason thereof it was entitled to the unobstructed use thereof as public streets.

As the plaintiff upon appeal has abandoned its suit for damages, the suit is now one against the M., K. & T. Company for injunction only.

Defendant answered by general denial, specially pleaded its charter rights as a railroad and common carrier, the rights and powers of the city of Houston under its charter with reference to streets within its limits. It alleged the necessity for the relocation of its freight terminals in Houston and the construction of additional track facilities to meet the demands made upon it as a common carrier. It alleged that under the Constitution and statutes of Texas, and its charter, the city had and has for many years had full power and authority to vacate, close, abandon, and sell the streets within its boundaries. It then alleged that, in pursuance of a contract entered into between it and the city for the mutual benefit of both parties, the city by a valid ordinance, in consideration of the transfer of valuable property to it by defendant, conveyed to defendant that portion or parts of the streets closed by defendant, and other property; that, after such conveyance and the acquisition of the property conveyed, it removed structures therefrom, and constructed thereon its railroad tracks, freight station, and other improvements in connection therewith; that up to the time of such construction plaintiff had not instituted this suit for injunction, and did not do so until August 12, 1927, a time subsequent to defendant's having incurred large expenses in purchasing the property and making improvements thereon. Pleading in the alternative, it said that by reason of the premises the court should deny the injunction prayed for by plaintiff if for no other reason upon the balance of convenience.

#### Facts.

On the 13th day of April, 1837, one J. B. Frost became the owner of 15 acres of land out of the eastern part of the John Austin survey in Harris county, Tex., and in a few days thereafter one J. W. Moody became the owner of another 15-acre tract, a part of the same

survey. Both of such tracts are now, as they have been for many years, within the boundaries of the city of Houston. Both of them were conveyed to the respective purchasers, Frost and Moody, as acreage. The Frost tract thereafter became known as "Frost Town." Both of said tracts were at the same time—date not shown—subdivided into lots and blocks. On January 1, 1879, one W. E. Wood made an actual survey of a part of the city of Houston, composed of the Frost and Moody 15-acre tracts. He compiled from such survey a map of the lands surveyed, shown by Plaintiff's Exhibit No. 1. Such map represents only what the surveyor found on the ground at the time the survey was made with reference to the existence of streets and boundaries of property, etc. There is no evidence tending to show that he reproduced on his map any part of a pre-existing plat of either Frost Town or of the Moody addition, if any such plat was ever compiled. This fact is evident from an inspection of the map, which shows that, if there had ever been any prior plat of either of said tracts, he did not attempt to reproduce the same, because on that part of the map embracing the Moody tract not a single block number is shown, nor the name of any street given. There is nothing tending to show that the Moody 15-acre tract was subdivided by any one prior to 1879, nor to show that the Hartwell Iron Works, which brought this suit, bought with reference to either Bramble, Lyle, or Runnels street.

The plaintiff's property was conveyed to it by J. J. Settegast on the 1st day of June, 1904; by such conveyance it is described as a part of the J. W. Moody tract, and further described by metes and bounds as beginning at a stake in the *eastern boundary line* of Pine street 112½ feet north of the north boundary line of Runnels street. Thence north *with the eastern boundary line of Pine street* to another stake in the *eastern line of Pine street*, where the south line of Race street extended eastwardly intersects the east boundary line of Pine street. Thence east 240 feet along the south boundary line of Race street to a stake. Thence southwardly 701 feet to a stake to the east line of the Moody tract. Thence north 60 feet to a stake. Thence west 100 feet to the place of beginning, including within said bounds lots 12 to 20, inclusive, and part of lot 11 of the Moody addition *according to Whitty & Scott map of Houston*, made in 1895, and also including the old Super homestead tract in such Moody addition according to said Whitty & Scott maps, and also that part of the Moody addition of a tract lying between the old Super homestead tract and lots 12 to 20 *east of Pine street*. In the deeds offered in evidence there is no reference to any map, nor reference to any dedicatory plat or map of the Moody addition with reference to which sales were made. There was no proof that the Whitty & Scott map of 1895 was a reproduction of any pre-existing plat, if any such plat was ever made. Nor was there any proof that either Frost or Moody ever subdivided their respective tracts into lots, blocks, and streets by means of a dedicatory map or plat, or that any sale was ever made with reference to any such map or plat.

On all maps introduced in evidence it appears that Pine street runs practically north and south, and that Bramble street runs east and west, and that it extends no further east than the west line of Pine street, a point many feet west of plaintiff's property upon which its business improvements are situated, which lies wholly east of Pine street. It is shown that, if Lyle street ever extended east of the west line of Pine street, such part thereof as extended further east was closed by the plaintiff, and was so closed at the time defendant closed that part of the same lying west of Pine street.

It is conclusively shown that Bramble street is wholly within the boundaries of "Frost Town," and that no part of the plaintiff's property abuts on said street, and the evidence shows that, if the two 15-acre tracts were ever formally subdivided, the Frost tract was the first to be so subdivided. This appears obvious from the Wood map, made in 1879, introduced in evidence. That map shows that practically all of the land owned by plaintiff was in 1879 acreage property. It appears, therefore, that what is shown on said map or plat as "Frost Town," including Pine and Lyle streets, were parts of the Frost tract and no part of the Moody tract.

We agree with the conclusions of defendant that, when the maps introduced in evidence are interpreted in the light of the other facts shown, it is made to appear: (1) That the land now owned by appellant is situated entirely within what is known as the Moody tract, sometimes designated as Moody addition; (2) that at the time the Wood map was compiled appellant's land was then acreage, but the Frost tract had to some extent been subdivided, although there is no proof that there was an original subdivision map, and no proof as to just what was delineated on such map, if any; (3) that Pine, Lyle, and Vine (now Bramble), Race, and Arch streets were entirely within the boundaries of the Frost tract; (4) that there was no evidence to show that the land now owned by appellant was platted as a part of the Moody addition until long after the Wood map was compiled, but was platted prior to 1895, and probably about 1879, although there is no proof of the existence of any dedicatory map or the sale of lots with reference to any such map; (5) that a part of Lyle street shown on both the Wood map and the Whitty & Scott map is included within the boundaries of the land claimed by appellant, and has been inclosed by a fence and occupied by it for over twenty-five years.

Before Bramble, Lyle, and Runnels streets were closed, a contract was entered into between the city of Houston and the M., K. & T. Company on the 6th day of June, 1927, the purpose of which is disclosed in the preamble, which is as follows:

"Whereas said Missouri, Kansas & Texas Railroad Company of Texas desires to use a certain portion of Runnels, Bramble, Spruce and Maple, Chenevert and Lyle Streets and Maple Place Alley for use for freight terminal purpose and;

"Whereas the City of Houston is desirous of securing certain properties for the widening of Gabel Street and for the construction of a subway underneath the Galveston, Houston & Henderson and Houston Belt & Terminal Railroad Company's tracks adjoining Block No. 110, and out of Lot 17 of the S. M. Williams survey and part of the Moody subdivision of the John Austin two-league grant, Houston, Harris County, Texas.

"It is therefore hereby agreed and understood by and between the parties thereto as follows, to wit:

"First: Missouri, Kansas & Texas Railroad Company of Texas will secure and deed to the City of Houston, Texas, for street and subway purposes the following described tract of land, to-wit: [Here follows description of property.]"

Upon its part the city agreed to pass an ordinance vacating and closing the parts of streets in question, and, after same were vacated and closed, and the railway company had secured the land for the city which it desired, was to execute a quitclaim deed to the railway company.

The railway company, on November 16, 1928, deeded to the city of Houston a strip of land 20 feet in width along the east line of Gable street off its property, the same extending from the north line of Magnolia street to the southwesterly limits of the right of way of the G. H. & H. Railway.

It was expressly agreed that this 20-foot strip was deeded to the city for the purpose of widening Gable street, and that such strip (shown in red on the Bracey map) was at the time of the trial a part of Gable street, and was being used as such.

To carry out the terms of the contract the city council on the 12th day of July, 1927, regularly passed an ordinance vacating and closing Bramble, Lyle, and Runnels streets. This ordinance was amended by making certain slight additions to the description of portions of streets vacated and closed by the ordinance, duly passed and approved October 5, 1929.

Under such contract, agreement, and ordinance, the M., K. & T. Company took possession of the property conveyed to it by the city, and constructed its railroad tracks and other improvements thereon.

The case was submitted to a jury upon special issues, in answer to which the jury found:

First. That all of plaintiff's land that is a part of the Austin survey as described in the deed from J. J. Settegast to plaintiff lies within the J. W. Moody addition; second, that the market value of plaintiff's land immediately after the streets in question were closed by defendant was the same as before such streets were closed.

Upon such findings of the jury and upon the evidence, the court rendered judgment denying the injunction prayed for by plaintiff. Plaintiff has appealed.

By its first proposition appellant contends that the trial court erred in overruling its general demurrer to all of the appellee's answer except the general denial, because the matters and things therein alleged showed no legal right on the part of defendant to close the streets referred to, especially Bramble, Lyle, and Runnels streets.

We overrule such contention. The answer was not subject to the complaints made thereof.

By propositions Nos. 3 and 4, appellant contends that the evidence shows that plaintiff's land abuts upon Bramble, Lyle, and Runnels streets, and that as such abutting owner it had a special interest in such streets and their use, and therefore it was entitled to the injunction prayed for requiring the opening thereof, and the court erred in refusing to award to it such injunction.

■ We overrule the contention. It is clear, we think, that appellant's property does not abut upon Bramble street, and that appellant never acquired any rights in Lyle street other than a public easement. We think the evidence shows that Lyle street was laid out as a street of the Frost addition, and that it lies wholly upon the Frost 15-acre tract; that the property of appellant lies wholly within the Moody tract; that the vendor of appellant at no time owned any interest in Lyle street, and therefore by his deed he conveyed no interest in said street to appellant. The right of appellant in such street was purely one of public easement of which it may be deprived by a closing of same by the city of Houston, as it is a street of said city.

On page 27 of appellant's brief it admits that Runnels street, which lies to the south of its property, is not a street abutting on plaintiff's property, in the following language: "The closing of those portions of Bramble and Lyle streets prevents the passage of plaintiff from his property through said streets to Gable Street, and the closing of Runnels to the south, *though that is not a street abutting plaintiff's property*, prevents transit through that street." (Italics ours.)

There was ample evidence to support a finding that appellant had in no manner acquired a private easement in any one of the streets

closed, by virtue of its deed to its property. As to whether appellant acquired such private easement was not submitted to the jury, nor was there any request for any such submission.

■ We think it is clear that the city had the legal power to close said streets under the terms and for the purposes stated in the contract and agreement it had with appellee, which is shown to have been carried out. One of the considerations moving the city to enter into said contract and to close the streets in question was to eliminate the traffic hazards of grade crossings on such streets.

Appellee having acquired the fee-simple title to the property now occupied by its freight terminal, it is conceivable that it might have constructed its terminal and freight warehouses and buildings without closing the streets in question, and leaving these streets open for such traffic as might pass that way across the various switches and tracks. As shown by Plaintiff's Exhibit 3, there are some eight or ten separate tracks crossing what was formerly known as Lyle street and ten or twelve tracks crossing what was formerly Runnels street. Can it be doubted for a moment but that the hazard which the witnesses testified existed where there was only one railroad track would have been magnified many times? It would have been folly indeed for the city of Houston, in making its plans for the proposed subway, to eliminate grade crossings over two railroad tracks to have left open these short streets where eight to eleven separate railroad tracks were to be constructed. As stated by the witness Seaman, if Lyle and Runnels streets were open to-day with these various railroad tracks crossing them, that would be a decided traffic hazard.

■ The city of Houston being vested with power to determine the necessity for vacating streets, and the city council having acted in conformity with law in vacating the streets in question, its action cannot be inquired into by the court, in the absence of proof that it was done solely for the purpose of promoting a private enterprise. In 13 R. C. L. p. 70, it is said: "The presumption is that a street or highway was vacated in the interest of the public, and that its vacation was necessary for public purposes, and the burden of showing to the contrary will be put upon the persons who object to the proceeding."

We have no doubt that the city had the authority to close the streets in question. Kahn v. City of Houston (Tex. Com. App.) 48 S.W. (2d) 595, 596.

At the Fifth Called Session of the Forty-First Legislature (Acts 41st Legislature [1930] p. 257, c. 84 [Vernon's Ann. Civ. St. art. 4646a]), the Legislature passed an act giving cities authority to close streets, which be-

came effective June 18, 1930. This act is applicable to this case, which was not tried until May 18, 1931. The act referred to, among other things, provides as follows:

"Art. 4646a.—No injunction shall be granted to stay or prevent the vacating, abandonment or closing, by the City Council or governing body of any incorporated city of this State, of any street or alley in any such incorporated city of this State, except at the suit of the owner or lessee of real property actually abutting on that part of such street or alley actually vacated, abandoned or closed, and then only in the event that the damages of said owner or lessee shall not have been released or shall not have been ascertained and paid in a condemnation suit by such city.

"Sec. 2. Provided that any person, who under existing laws has the right to enjoin a city from vacating, abandoning or closing any street or alley of such city and whose right to such injunction is denied by this Act, shall have the right to an action for damages for any injury that he may sustain by reason of the vacating, abandoning or closing of any street or alley by such city.

"Sec. 3. The fact that there is much confusion in reference to whether or not the right to enjoin a city from abandoning and closing a street applies only to abutting property owners, and the further fact that the decisions of the Courts of this State have rendered it doubtful as to what are the rights of the city, and the rights of property owners with reference to closing streets, creates an emergency and an imperative public necessity which requires that the Constitutional Rule requiring bills to be read on three several days be, and the same is hereby suspended, and that this Act shall take effect and be in force from and after its passage, and it is so enacted."

Our conclusions upon the pleading and evidence are: That the rights of appellant in the obstructed streets are such only as the community generally is entitled to enjoy, and, since it is conclusively shown that it has suffered no damage in the depreciation of the value of its property, or that it has suffered any inconvenience not suffered by the community in general by reason of such obstruction, it is not entitled to injunctive relief as prayed for.

■ To entitle a property owner to injunctive relief against the vacation of a purely public street, it must be shown that he will suffer a special injury and not such only as is cast upon the community generally. The general rule is that the mere fact that a vacation of a street in which one has no private interest results in a depreciation of the value of property of an owner of land abutting on the same, which causes a diversion of travel and added inconvenience of access, does not of itself constitute such special injury as en-

titles him to damages. Johnson v. Lancaster (Tex. Civ. App.) 266 S. W. 565; Chichester v. Kroman, 221 Ala. 203, 128 So. 166; York v. Chesapeake & O. Ry. Co., 240 Ky. 114, 41 S.W.(2d) 668; Arcadia Realty Co. v. City of St. Louis, 326 Mo. 273, 30 S.W.(2d) 995; Dickson v. Town of Centreville, 157 Miss. 490, 128 So. 332; Kemp v. City of Seattle, 149 Wash. 197, 270 P. 431; Kahn v. City of Houston (Tex. Com. App.) 48 S.W.(2d) 595; 13 R. C. L. page 75; Siegel v. Hotel Co. (Tex. Civ. App.) 40 S.W.(2d) 168.

By appellant's fifth proposition it is insisted that the court erred in denying the injunction prayed for as to Lyle and Runnels streets, because it and appellee deraigned title to their respective properties from a common source proprietor, and that appellant acquired a property right in the use of the streets closed.

What we have said under our disposal of propositions 3 and 4 is, we think, a disposal of proposition 5 adversely to appellant's contention. However, we will make the following observations:

One J. K. Allen, in the year 1837, sold 15 acres of land to one Frost, and a few days later sold to one Moody 15 acres adjoining the Frost tract. The Frost tract embraced and included within its boundaries the following streets: Pine, which borders it on the east; Lyle, which borders it on the south; and also Bramble and Race streets traversing its center. The evidence shows that the Frost tract was platted by some owner or owners, and in such plat the streets mentioned appear as streets of "Frost Town." Such plat was made and was in existence long before the Moody tract was platted, if it was ever platted. No part of the streets closed were parts of the Moody subdivision. Neither Moody, nor any one of his successors in title, ever owned any part of the streets mentioned. Wherefore neither of them did convey to appellant what they did not own, and as a consequence appellant has not by its deed, nor otherwise, acquired any private rights or easement in any of said streets. Appellant is not, nor was it ever, the owner of any part of any of such streets as a common source owner, or otherwise; hence its suggestion of common source owner has no application to the facts of this case.

It is plain from the evidence that appellant's grantor owned no interest in the fee of either Pine or Lyle streets; the conveyance to appellant carefully avoids "bounding" land conveyed by the street or using any language which could be construed as a reference to it as a boundary. The beginning point called for is in the outside line of the street. The description confines the west line to the outside of Pine street. The grant negatives the implication of a conveyance of an easement in Pine street.

For the reasons above expressed, the judgment is affirmed.

Affirmed.

GRAVES, J.

I concur in a judgment of affirmance because, as seems to me, appellant failed to show either, (1) that the opposing parties deraigned their respective titles through a common-source proprietor who had so laid out and dedicated the three closed streets as to bring them—as against each other—within the principle applied in such cases as Dallas Cotton Mills v. Industrial Company (Tex. Civ. App.) 252 S. W. 821, and Blair v. Astin (Tex. Civ. App.) 10 S.W.(2d) 1054; or (2) that it was an abutting owner on any one of such streets—especially on such part thereof as could have left it any injunctive right against the closing under the recent holding in Kahn v. City of Houston (Tex. Com. App.) 48 S.W. (2d) 595, 596, and the new statute on which it was based, article 4646a, Vernon's Ann. Civ. St., that was enacted during the pendency of that cause.