Howard CARRICO, on behalf of himself and all other citizens and taxpayers of the City of Owensboro, Kentucky, Appellant,

v.

The CITY OF OWENSBORO, Kentucky, a municipal corporation, et al., Appellees.

Court of Appeals of Kentucky.

June 14, 1974.

Richard W. Berry, Owensboro, for appellant.

Hugh D. Moore, Owensboro, for appellees.

STEINFELD, Justice.

Alleging that he was a citizen, resident, property owner, business operator and tax-payer of the City of Owensboro (a city of the second class), appellant Howard Carrico sued on his own behalf and that of all other citizens and taxpayers of Owensboro to enjoin its Mayor and Board of Commissioners from proceeding with a project entitled "Neighborhood Development Plan." He also alleged that the adopted resolution authorized the city officials to request grants or loans from the federal government. He did not allege that city funds were to be expended. The trial court found that Carrico's suit was without merit, wherefore it entered a summary judgment denying relief and dismissing the action. From that judgment, Carrico appeals. We affirm for a reason different from the one on which the trial court based its decision. Franklin v. Helton, 298 Ky. 580, 183 S.W.2d 532 (1944); Sloan v. Jewel Ridge Coal Corp., Ky., 347 S.W.2d 504 (1961).

A defense asserted at the trial level and argued here is that Carrico " * * * does not have standing to maintain this lawsuit since his interest in the official action challenged does not differ from that of the public generally." Before addressing ourselves to this issue, we deem it appropriate to relate certain facts and discuss the procedure followed in the trial court.

In 1961 the Owensboro Board of Commissioners adopted resolutions which embarked that city on an urban renewal project. By 1963 disillusionment with that program prompted citizens to demand that the city government discontinue these renewal efforts. Being unsuccessful, those citizens resorted to the "initiative and referendum" procedure authorized by KRS 89.610, which caused submission to the voters at the 1963 general election of the question of whether the then existing city urban renewal development proceedings should be discontinued. A majority of the voters declared that the activities of this program " * * * shall cease as of the effective date of this ordinance," therefore, they were abandoned. Tranquility and urban blight prevailed until 1972, when the Board

of Commissioners adopted resolutions inaugurating a "Neighborhood Development Program." Carrico promptly launched his attack.

On the basis of several asserted grounds, the city moved to dismiss " * * * for failure to state facts upon which relief can be granted (CR 12.02) and for a summary judgment (CR 56.02)." Carrico also moved for a summary judgment. The parties supported their respective motions with affidavits and exhibits. With the litigation in that posture, it was adjudged, among other things, that Carrico had "standing to maintain this action" and that,

" * * * due to the long lapse of time since the election and material change of conditions, of which the court takes judicial notice, and due to the fact that the plan for Neighborhood Development presently proposed differs so materially in essential features from the plans for community development and urban renewal to which the 1963 vote had reference, the 1963 election does not prohibit the Board of Commissioners from proceeding with the presently proposed Neighborhood Development Plan."

■ Carrico claims that the issue of his standing to maintain this action is not before this court because the city did not file a cross-appeal. CR 74. He moved to strike that portion of appellees' brief which contains the argument addressed to this contention. The appellees seek *only* to have the judgment affirmed, therefore, without filing a cross-appeal, they are entitled to argue that the trial court reached the correct result for the reasons it expressed and for any other reasons appropriately brought to its attention. Dudley v. Goddard, 11 Ky.Law.Rep. 480, 12 S.W. 382 (1889); Cf. Louisville Woolen Mills v. Kindgen, 191 Ky. 568, 231 S.W. 202, 206 (1921); Dwiggins v. Howard, 247 Ky. 746, 57 S.W.2d 649, 652 (1932). Carrico's motion to strike is denied.

■ Carrico does not claim that he is a resident, property owner or business operator in the section of Owensboro involved in the Neighborhood Development Plan, therefore he does not assert his claim on the basis that he will sustain some injury which is special or peculiar to himself. For a discussion of the right to attack an urban renewal project, see 8 A.L.R.Fed. 415, Annotation. Although there are statements to the contrary, therein it is said at page 427:

"In considering the question of who is entitled to attack urban renewal projects, it should be noted that the traditional doctrine of 'standing' has three aspects. To have standing, a party must have a sufficient interest in the controversy to assure an adversary presentation (this requirement stemming from the 'case' or 'controversy' limitation of Article 3 of the United States Constitution); a party must have an interest in the alleged wrong other than that of a member of the general public; and a party must show that his legal rights or privileges have been invaded."

Under the circumstances of this case, we adopt that rule. We also rely on the rationale of York v. Chesapeake & Ohio Railway Co., 240 Ky. 114, 41 S.W.2d 668 (1931).

■■ Carrico did not allege that public funds had been or were about to be expended in the project, therefore as a taxpayer he had no standing to obtain an injunction. His assertions did not show that the acts he sought to prohibit were prejudicial to his rights as a taxpayer or would result in loss to the municipality. Such a showing was essential here to sustain his standing to sue. 64 C.J.S. Municipal Corporations §§ 2127, 2139 and 2143. Cf. Flast v. Cohen, 392 U.S. 83, 88 S.Ct. 1942, 20 L.Ed.2d 947 (1968).

That brings us to a consideration of Carrico's standing as a citizen of Owensboro to attack the resolution. Schoening v. Paducah Water Co., 230 Ky. 453, 19 S.W. 2d 1073 (1929), held that any bonafide citi-

zen of a city of the second class has "* * * the right to test the validity of a city ordinance."[1] Schoening was based on the provisions of K.S. 3063, which specifically authorized a citizen of a city of that class to bring such an action. That statute was replaced by KRS 84.140 which contains no such provision,[2] and at this time there exists (so far as we are aware) no such statutory authorization. We are of the opinion that naked municipal citizenship is an insufficient basis on which Carrico could launch his attack. Cf. Wegener v. Wehrman, 312 Ky. 445, 227 S.W. 2d 997 (1950). The rule is stated in 42 Am.Jur.2d, Injunctions, Sec. 179, p. 948, thusly:

> "The right of a citizen or taxpayer to restrain acts of public officials is in some instances granted or regulated by statute, but ordinarily, and in the absence of statute, private citizens or corporations must possess something more than a common concern for obedience to law before they will be permitted to maintain injunction suits against public officers. A private person who wishes to restrain an official act must allege and prove damage to himself different in character from that sustained by the public generally. The reason for the rule rests in the sound public policy of protecting the public corporation or its officers from a multiplicity of suits."

Although the suit was dismissed on other grounds, the judgment will be and it is affirmed.

OSBORNE, C. J., and JONES, MILLIKEN, PALMORE, REED, STEINFELD and STEPHENSON, JJ., sitting.

JONES, MILLIKEN, PALMORE, STEINFELD and STEPHENSON, JJ., concurring.

OSBORNE, C. J., and REED, J., concurring in result only.

---

1. Also see Kentucky Utilities v. Ginsberg, 255 Ky. 148, 72 S.W.2d 738 (1934).

---

2. That provision of the former statute was omitted by reason of Ex parte City of Ashland, 256 Ky. 384, 76 S.W.2d 43 (1934).