RENDERED: MARCH 13, 2026; 10:00 A.M.
NOT TO BE PUBLISHED

# Commonwealth of Kentucky

# Court of Appeals

NO. 2025-CA-0272-MR

LEXINGTON-FAYETTE
URBAN COUNTY PLANNING
COMMISSION AND ITS MEMBERS,
ZACHARY DAVIS, JANICE MEYER,
IVY BARKSDALE, WILLIAM
WILSON, LARRY FORESTER,
GRAHAM POHL, BRUCE NICHOL,
JUDY WORTH, ROBIN MICHLER,
AND MICHAEL OWENS, IN THEIR
OFFICIAL CAPACITIES                                              APPELLANTS


                    APPEAL FROM FAYETTE CIRCUIT COURT
v.              HONORABLE JULIE MUTH GOODMAN, JUDGE
                         ACTION NO. 23-CI-03158


AUSTIN WILKERSON; DONN
CHICKERING; GREAT POINT, LLC;
SHAWN BERRY; AND TOTH
AND ASSOCIATES, INC.                                              APPELLEES


                        AND NO. 2025-CA-0275-MR


GREAT POINT, LLC; SHAWN BERRY;
AND TOTH AND ASSOCIATES, INC.                                    APPELLANTS

v.  HONORABLE JULIE MUTH GOODMAN, JUDGE
ACTION NO. 23-CI-03158


AUSTIN WILKERSON; DONN
CHICKERING; AND LEXINGTON-FAYETTE
URBAN COUNTY PLANNING
COMMISSION AND ITS MEMBERS,
ZACHARY DAVIS, JANICE MEYER,
IVY BARKSDALE, WILLIAM
WILSON, LARRY FORESTER,
GRAHAM POHL, BRUCE NICHOL,
JUDY WORTH, ROBIN MICHLER,
AND MICHAEL OWENS, IN THEIR
OFFICIAL CAPACITIES                                                  APPELLEES


OPINION
AFFIRMING

** ** ** ** **

BEFORE:  THOMPSON, CHIEF JUDGE; EASTON AND L. JONES, JUDGES.

JONES, L., JUDGE:  The general background of this matter is as follows.  On

September 14, 2023, the Lexington-Fayette Urban County Planning Commission

and its above-captioned members in their official capacities (collectively, the

Commission) took "action" regarding an "Amended Final Development Plan"

(Plan) submitted by Great Point, LLC; Shawn Barry; and Toth & Associates, Inc.

(collectively Great Point).  The Plan was for the construction of a "retail coffee

shop with drive-through" on property located at 2400 Versailles Road in

Lexington, Kentucky. The Commission insists that the "action" it took was a "conditional approval" of the Plan. Afterward, Austin Wilkerson and Donn Chickering contested the Commission's action by filing an original proceeding in Fayette Circuit Court pursuant to Kentucky Revised Statute (KRS) 100.347.

At issue in this consolidated matter is the circuit court's February 23, 2025 order of reversal. In sum, the circuit court found the Commission's action was outside the scope of its authority and noncompliant with Lexington's zoning ordinances. While the Commission and Great Point have separately appealed the circuit court's order (in Appeal Nos. 2025-CA-0272-MR and 2025-CA-0275-MR, respectively), both contend – for roughly the same reasons which will be discussed below – that the circuit court erred in reversing the Commission.[1] Upon review, we affirm.

---

[1] The Commission filed an ostensible appellee brief in Great Point's separate appeal (Appeal No. 2025-CA-0275). We use the word "ostensible" because the Commission fundamentally misunderstood its role as an *appellee* in filing that brief. An appellee is only entitled to argue that the lower tribunal reached the *correct* result for the reasons expressed in its judgment or for any other reasons that were appropriately brought to the lower tribunal's attention. *Carrico v. City of Owensboro*, 511 S.W.2d 677, 679 (Ky. 1974). Rather than making such arguments, however, the Commission simply reasserted the arguments it posed in its separate appeal regarding why, in its view, the circuit court's judgment was *incorrect*.

Considering the Commission's separate appeal and the collective disposition of this consolidated matter, it would be pointless to strike the Commission's ostensible appellee brief as an unauthorized filing. Rather, it is enough to simply point out the obvious: The Commission's effort to have this Court consider its same appellate arguments twice was needlessly redundant.

## STANDARD OF REVIEW

This appeal originates from an original action filed in circuit court by persons claiming to be injured or aggrieved by final action of a planning commission. *See* KRS 100.347(2). The circuit court's dispositive judgment made no findings of fact, no material issues of fact existed, and it resolved only questions of law. Accordingly, the circuit court rendered what was essentially a summary adjudication, and our review is *de novo*. *See* CR[2] 56.03; *see also Patton v. Bickford*, 529 S.W.3d 717, 723 (Ky. 2016). As to the merits of the Commission's action, our review is for arbitrariness. Arbitrariness concerns "(1) action in excess of granted powers, (2) lack of procedural due process, and (3) lack of substantial evidentiary support[.]" *Am. Beauty Homes Corp. v. Louisville & Jefferson Cnty. Plan. & Zoning Comm'n*, 379 S.W.2d 450, 456 (Ky. 1964). Nonetheless, "[i]t is possible that other apparently unrelated matters of law may be considered. Judicial review of legal questions cannot be impaired by the legislature." *Id*. at 456-57 (footnote omitted).

## ANALYSIS

As indicated, this consolidated matter arises from "action" the Commission took during a September 14, 2023 administrative hearing after considering its Subdivision Committee's recommendations regarding Great Point's

---

[2] Kentucky Rule of Civil Procedure.

Plan to build a retail coffee shop with a drive-through at 2400 Versailles Road in Lexington, Kentucky. To properly frame what we deem the most important issue presented – namely, what "action" the Commission took – we turn first to the relevant language of what was the operative version of Lexington-Fayette Urban County Government (LFUCG) Ordinance § 21-4, which delineated the mutually exclusive "actions" the Commission *could*, in its discretion, have taken at that time:[3]

> The following shall be the procedure for Planning Commission consideration of any development plan.
>
> * * *
>
> (d) *Commission Action*.
>
> * * *
>
> The Commission will review the Subdivision Committee's recommendation and then act for approval, conditional approval with conditions noted, postponement, or disapproval. The Commission may modify or disapprove the development plan if it finds the plan does not comply with the requirements of this Zoning Ordinance, and when applicable, the Land Subdivision Regulations or if it finds there are existing or potential flood, drainage, traffic, topographic, health, safety, nuisance or other similar problems relating to the development of the subject property. In addition to these items, development plans which seek to amend the original development plan or its approved amendments

---

[3] We have quoted the version of LFUCG Ordinance § 21-4 effective when the Commission took its "action." The ordinance was subsequently amended and is currently worded differently, but that point is not germane to our analysis.

-5-

shall also be subject to the provisions of Section 21-7(e) hereinbelow. Reasons for action of postponement or disapproval shall be fully incorporated in the Commission's minutes. The following actions by the Commission shall have the meanings so stated:

(1) *Approval*. Means the development plan is ready to be certified by the Commission's Secretary with no further corrections or revisions of the plan required by the developer.

(2) *Conditional Approval*. Means the development plan cannot be certified by the Commission's Secretary until the developer has complied with the conditions of approval set forth in the Planning Commission's action on the plan.

(3) *Postponement*. Means that the Commission has deferred action until some future Commission meeting in order that certain clarifications can be made in regard to the development plan. No completely new re-submittal is required of the developer as is the case for disapproval.

(4) *Disapproval*. Means disapproval of the plan. To request new review and action, the developer must file a new application along with a filing fee, plan copies, and other material as required under Subsection (b) of this section. . . .

With the above in mind, there appears to be no dispute among the parties that if the Commission had given its *approval* to the Plan pursuant to LFUCG Ordinance § 21-4(d)(1) at the September 14, 2023 hearing, then doing so would have been improper because sixteen outstanding conditions needed to be satisfied before the Plan could have been properly certified. Those sixteen

conditions, which the Commission enumerated before the circuit court and now this Court, included (in the Commission's words):

1. Urban County Engineer's acceptance of drainage, storm and sanitary sewers, and flood plain information.

2. Urban County Traffic Engineer's approval of street cross-sections and access.

3. Landscape Examiner's approval of landscaping and landscaping buffers.

4. Addressing Office's approval of street names and addresses.

5. Urban Forester's approval of tree preservation plan.

6. Department of Environmental Quality's approval of environmentally sensitive areas.

7. Bike & Pedestrian Planner's approval of bike trails and pedestrian facilities.

8. Greenspace planner's approval of the treatment of greenways and greenspace.

9. Division of Fire, Water Control Office's approval of the locations of fire hydrants, fire department connections, and fire service features.

10. Division of Waste Management's approval of refuse collection locations.

11. Documentation of Division of Water Quality's approval of Capacity Assurance Program requirements, prior to plan certification.

12. United States Postal Service Office's approval of kiosk locations or easement.

13. Addition of existing and proposed easements.

14. Depict access into the structure of interior order point.

15. <u>Denote</u>: Access to the property from Versailles Road is subject to the approval by the Kentucky Transportation Cabinet.

16. Remove proposed benches and statue from floodway.

*See* Commission's Br. at 2.

In light of those outstanding conditions, the Commission has maintained since the inception of this litigation that the "action" it intended to take (and believes it took) at the September 14, 2023 hearing regarding the Plan was a *conditional approval* pursuant to LFUCG Ordinance § 21-4(d)(2). The Appellees, on the other hand, have argued:[4]

> [T]he Planning Commission did not vote to conditionally approve the Final Development Plan. The Commission voted to "approve" the plan. There is nothing in the record to indicate that the vote was to approve subject to the conditions recommended by the Subdivision Committee. The vote was for approval.

*See* Wilkerson and Chickering's May 16, 2024 Reply Br., Record at 358.

---

[4] While the appellees presented this argument below, it was not a basis of the circuit court's ultimate decision to reverse the Commission's decision to approve the Plan, and they have not reasserted it in their appellee briefs. That said, we may affirm for any reason sustainable in the record. *See Kentucky Farm Bureau Mut. Ins. Co. v. Gray*, 814 S.W.2d 928, 930 (Ky. App. 1991).

Parenthetically, we agree with the parties that the sixteen conditions enumerated above, which remained outstanding at the September 14, 2023 hearing, were indeed conditions that needed to be satisfied before the Plan could have properly secured the Commission's approval. *See, e.g.*, *Triad Dev./Alta Glyne, Inc. v. Gellhaus*, 150 S.W.3d 43, 46 (Ky. 2004) ("The Planning Commission approved the plan subject to certain conditions. It delegated to the MSD[5] and the County Works Department the responsibility for evaluating the drainage and construction plans."). As such, the difference between an *approval* and an *approval with conditions* of the Plan is not simply a matter of semantics here. Which of those actions the Commission actually took is a matter that must be resolved because the Commission would have abused its discretion if it had unconditionally approved the Plan at that point in time. The Commission is required to ensure that development plans comply with Lexington's zoning ordinance, and it acts outside the scope of its authority when it unconditionally approves a noncompliant development plan.

As for *how* we must resolve this issue, an important rule applies. The Commission's decision under review is a form of legislative action. The judiciary has no authority to rewrite laws or other legislative actions for the purpose of improving them, or for the purpose of restructuring them in accordance with what

[5] Louisville and Jefferson County Metropolitan Sewer District.

might have been the subjective *hopes* of the legislative body. In other words, our role is one of judicial interpretation, not judicial legislation. An important safeguard against judicial legislation is our principle that when interpreting legislation, we must look first to its plain language, and:

> if the language is clear, our inquiry ends. We hold fast to the rule of construction that the plain meaning of the statutory language is presumed to be what the legislature intended, and if the meaning is plain, then the court cannot base its interpretation on any other method or source.

*Univ. of Louisville v. Rothstein*, 532 S.W.3d 644, 648 (Ky. 2017) (internal quotation marks and citations omitted).

Accordingly, we must resolve whether the Commission's approval was conditional by determining whether, pursuant to LFUCG Ordinance § 21-4(d)(2), those sixteen conditions of approval were indeed "*set forth* in the Planning Commission's *action* on the plan." (Emphasis added.) To do so, we turn to the only two sources of record capable of answering that question: (1) the Commission's minutes from the September 14, 2023 hearing, where the Commission memorialized what transpired regarding the Plan and what its action ultimately was; and (2) the video record of that administrative hearing. In relevant part, the Commission's minutes provide:

> c. PLN-MJDP-23-00047: FOX PROPERTY, LOT (AMD) (11/5/2023) – located at 2400 VERSAILLES ROAD, LEXINGTON, KY

-10-

. . .

The Subdivision Committee Recommended: **Approval**, subject to the following conditions:

1.  Urban County Engineer's acceptance of drainage, storm and sanitary sewers, and floodplain information.

2.  Urban County Traffic Engineer's approval of street cross-sections and access.

3.  Landscape Examiner's approval of landscaping and landscaping buffers.

4.  Addressing Office's approval of street names and addresses.

5.  Urban Forester's approval of tree preservation plan.

6.  Department of Environmental Quality's approval of environmentally sensitive areas.

7.  Bike & Pedestrian Planner's approval of bike trails and pedestrian facilities.

8.  Greenspace planner's approval of the treatment of greenways and greenspace.

9.  Division of Fire, Water control Office's approval of the locations of fire hydrants, fire department connections, and fire service features.

10. Division of Waste Management's approval of refuse collection locations.

11. Documentation of Division of Water Quality's approval of Capacity Assurance Program requirements, prior to plan certification.

12. United States Postal Service Office's approval of kiosk locations or easement.

13. Addition of existing and proposed easements.

14. Depict access to the structure for interior order point.

15. <u>Denote</u>: Access to the property from Versailles Road is subject to the approval of the Kentucky Transportation Cabinet.

16. Remove proposed benches and statue from floodway.

. . .

<u>Action</u> – Mr. Wilson made a motion, seconded by Mr. Nicol, and carried 5-3 (Worth, Michler, and Meyer opposed, Bell, Pohl, and Owens absent) to **approve** <u>PLN-MJDP-23-00047: FOX PROPERTY, LOT 4 (AMD)</u>.

*See* Minutes, Record at 99-101 (emphasis added).

To be clear, the Subdivision Committee's *recommendation* of conditions is a matter quite distinct from a legislative declaration by the Commission itself. Those recommendations were noted in the minutes, but they were not set forth in the Commission's action on the Plan. The video record of the September 14, 2023 hearing is also consistent with the minutes: The Subdivision Committee *recommended* the sixteen conditions; there was a staff presentation about the conditions; the applicants and citizens (both opposing and in favor of the applicants) answered questions from the Commission and provided comments; the Commission discussed the application; Commission member Wilson thereafter

-12-

made a motion to *approve* the Plan; and Wilson's motion to *approve* the Plan was carried by a majority vote of the Commission. As stated, if the language of a legislative pronouncement is unambiguous, then we cannot base our interpretation of it upon any other method or source. *Rothstein*, 532 S.W.3d at 648. That is the case here: The Commission unambiguously voted to *approve* the Plan, and there is nothing in the record to indicate that the vote was to approve subject to the conditions recommended by the Subdivision Committee.

To the extent the Commission is arguing it intended to incorporate or believes that it nevertheless incorporated those conditions into its approval, it is incorrect. As indicated, the Commission's subjective intentions and beliefs are irrelevant if they conflict with the plain language of its legislation. To the extent the Commission is arguing its mere recital of the Subdivision Committee's recommendations in its minutes equated to some form of substantial compliance with LFUCG Ordinance § 21-4(d)(2), it is likewise incorrect. Nothing in the Commission's enabling legislation permitted it to comply with LFUCG Ordinance § 21-4(d)(2) in that manner; and as a creature of ordinance, the Commission must – like any other administrative agency – find within its enabling legislation warrant for the exercise of any authority which it claims. *See, e.g.*, *Dep't for Nat. Res. & Env't Prot. v. Stearns Coal & Lumber Co.*, 563 S.W.2d 471, 473 (Ky. 1978).

-13-

Furthermore, either of those arguments would be disingenuous at best. *Immediately preceding* the Commission's unconditional approval of the Plan at the September 14, 2023 hearing, the Commission evinced its firm understanding of how to approve a development plan *with conditions*. To that point, roughly the same conditions were "recommended" by the Subdivision Committee and noted in the minutes in relation to another development plan for an entirely different property (*i.e.*, located at 673 Kennedy Road, Lexington, Kentucky); following commentary and discussion, Commission Member Barksdale made a motion to approve that other plan *subject to those recommended conditions*; her motion carried; and, consistently therewith, the minutes memorialized the Commission's action as follows:

> Action – Ms. Barksdale made a motion, seconded by Ms. Worth, and carried 7-0 (Meyer abstained, Owens, Bell, and Pohl absent) to approve PLN-MJDP-23-00037: NEWTOWN CORPORATION INDUSTRIAL PARK (ABC STORAGE) (AMD) *with the revised conditions*.

*See* Minutes, Record at 99 (emphasis added).

In sum, the Commission acted outside its authority and thus abused its discretion by unconditionally approving Great Point's Plan, and the circuit court achieved the correct result by reversing the Commission's decision as arbitrary.

It is therefore unnecessary to address the circuit court's two alternative bases for reversal as we may affirm for any reason sustainable in the

-14-

record.  *See Kentucky Farm Bureau Mut. Ins. Co. v. Gray*, 814 S.W.2d 928, 930 (Ky. App. 1991).  Whether the circuit court's alternative reasoning is correct or in error is immaterial.  The Commission's "approval" was in error and was properly rescinded by the circuit court's reversal.

## CONCLUSION

Considering the foregoing, we AFFIRM with respect to Appeal Nos. 2025-CA-0272-MR and 2025-CA-0275-MR.

ALL CONCUR.

BRIEFS FOR APPELLANTS/APPELLEES LEXINGTON-FAYETTE URBAN COUNTY PLANNING COMMISSION; AND ZACHARY DAVIS, JANICE MEYER, IVY BARKSDALE, WILLIAM WILSON, LARRY FORESTER, GRAHAM POHL, BRUCE NICHOL, JUDY WORTH, ROBIN MICHLER, MICHAEL OWENS IN THEIR OFFICIAL CAPACITIES:

Tracy W. Jones
William D. Razor
Lexington, Kentucky

BRIEFS FOR APPELLANTS/APPELLEES GREAT POINT, LLC, SHAWN BERRY, AND TOTH AND ASSOCIATES, INC.:

Jonathan T. Salomon
P. Branden Gross
Will E. Messer
Lexington, Kentucky

BRIEFS FOR APPELLEES AUSTIN WILKERSON AND DONN CHICKERING:

Jessica Winters
Lexington, Kentucky