## Adams et al. v. Helton, Sheriff.

Oct. 1, 1943.

H. L. Bryant and W. T. Davis for appellants.

Arthur Rhorer, Robert Watson, H. F. White and W. L. Hammond for appellees.

OPINION OF THE COURT BY JUDGE CAMMACK—Affirming.

This case involves only a recount of the votes cast in a local option election held in Bell County September 11, 1943. The following quotation from the record bears out this statement:

"At this point the attorney for the plaintiffs asked the advice and attitude of the Court toward what

consideration would be given to any irregularities that might appear in the marking or any other thing on the face of the ballots as they were being counted as to whether any evidence would be heard that would tend to explain or clarify such conditions, and the Court thereupon was of the opinion and so held that the ballots would be counted and considered on their face as they exist and appear in the boxes and that no explanatory evidence would be heard but that this procedure would not prejudice either party in the development of and preparation of the contest branch of the case; that the contents of the ballot boxes will be returned to the boxes, securely locked and preserved so that their integrity shall not be in question and that if it is necessary and legal to do so, they may be gone into later in the development of the contest case as a matter of evidence as to any conditions that might be in issue or litigation in the case.''

Obviously, those who asked for the recount, the Drys, and the opposing group, the Wets, had in mind that, in all probability, the election would be contested. It must be borne in mind, therefore, that we are now concerned with the appeal from the recount proceeding, wherein neither party questioned the integrity of the ballots, and wherein no evidence was offered as to the apparent fraud which appears to have been perpetrated while the official count was being made. We have only reviewed the action of the trial judge in considering the ballots ''on their face as they exist and appear in the boxes.''

The official count showed the Wets carried the election by 322 votes. On the recount the wet majority was reduced to 39 votes; the recount figures being 4,344 votes favoring prohibition and 4,383 votes opposing the proposition. There are 58 voting precincts in Bell County. On the recount one or both parties questioned ballots in 41 precincts. The number of ballots questioned per precinct range from 1 to 44; 262 ballots were questioned by the Wets and 137 by the Drys. In approximately 30 of the precincts the questioned ballots showed double markings, that is, as being voted ''Yes'' and ''No.'' In most instances the ''Yes'' markings on these ballots appear to be regular in that they were placed in or near the square, while the ''No'' markings, some of which were made by stencil, some by the blunt end of the stencil, some by pen-

cil markings and some by very obvious and discernible finger prints, were not so systematically placed.

The action of the trial court in refusing to count a number of additional ballots because of double markings was not questioned by either party. Neither was the action of the trial court questioned in refusing to count a considerable number of ballots to which the secondary stub was attached, save in two or three instances. Apparently, a systematic scheme was planned by someone to invalidate ballots voted ''Yes'' by placing ''No'' marks on them also. When and how this was done, we do not know, because, as we have indicated, no evidence was introduced on that question. The ballots could have been tampered with in the boxes, but it is more than likely the fraud was perpetrated at the time the original count was being made; but the parties have apparently left that question for the contest proceeding.

We have checked and rechecked the ballots questioned by the parties on the recount, a large majority of which contain double markings. Our study of these ballots convinces us that a total of 53 ballots in 12 precincts which the trial court counted as dry votes should have been thrown out because of the double markings. There are six ballots, one in the Northeast precinct, four in the Dorchester precinct, and one in the Cary precinct, which we think were erroneously rejected by the trial court over the protest of the Drys. The net reduction from the total dry vote would be 47. The wet vote remains unchanged at 4,383. Therefore, the majority of the Wets stands at 86 votes rather than at 39 as determined by the trial court.

The largest number of double markings appears in Pineville 3C precinct. On the recount the Drys objected to the action of the trial court in refusing to count 33 of these double marked ballots, while the Wets objected to his counting 11 which had double markings very similar to those on the 33 rejected ballots. The double markings on all 44 ballots appear to us to be much the same, and we can not distinguish between the two groups. Therefore, we think it was error to count the 11 ballots questioned by the Wets. We have the same view in respect to two such ballots in Pineville 2B precinct, five in the Greasy Creek precinct, four in the Dorton Branch precinct, 10 in the Arjay precinct, two in the Mathel precinct, four in the Binghamtown precinct, six in the Cen-

tral precinct, five in the Northeast precinct, two in the Exeter precinct and two in the Bennett's Fork precinct. The Drys also questioned the court's refusal to count some 23 ballots because the judge had either not signed them, or an abbreviation of his name had been placed thereon. An elaborate discussion of this question is not necessary, since the result of the election would not be changed if all of them were counted as the Drys contend. We may say in passing, however, that the court properly refused to count these ballots. Brandenburg v. Hurst, 289 Ky. 155, 158 S. W. (2d) 420.

The Wets insist the Drys should have filed a bill of exceptions, but no evidence was heard and they brought up a record of everything that transpired in the lower court. This was all they could do. The Wets have filed a cross appeal, but, obviously, our ruling on the appeal makes it unnecessary to discuss separately that question, because we have already considered the ballots questioned by the Wets.

Judgment affirmed.