## Franklin v. Helton et al.

Nov. 8, 1944.

Henry L. Bryant and W. T. Davis for appellant.

C. K. Calvert, W. L. Hammond, and Arthur Rhorer for appellees.

·OPINION OF THE COURT BY VAN SANT, COMMISSIONER
—Affirming.

This is the fourth appeal of as many decisions by the Trial Court on various questions growing out of the attempt to hold a local option election in Bell County September 11, 1943. The former opinions appear in Adams et al. v. Helton, 295 Ky. 326, 174 S. W. 2d 406; Adams et al. v. Helton et al., 296 Ky. 9, 175 S. W. 2d 1012; and Adams et al. v. Helton et al. 296 Ky. 446, 177 S. W. 2d 572. The first appeal was from the Court's decision on a recount of the ballots. In the decision on that appeal we held, after consideration of all questioned ballots, but without determining the question of fraud, which is now before us, the "Wets" appeared to have received eighty-six (86) more valid votes than the "Drys." On return of the case, after disposing of certain legal questions which were decided by this Court on the second and third appeals, the parties fought out the issue of fraud presented in the contest proper.

While eyewitnesses to particular acts of fraud are wonderfully lacking, the circumstantial evidence conclusively shows that fraud in abundance permeated the election from the moment the polls were opened until some time after the original count of the ballots by the Board of Election Commissioners. We will not attempt to describe the conditions proven in the record, but will content ourselves with two illustrations. Over six hundred (600) ballots were doubly voted; that is to say, were voted both "Yes" and "No." It was shown by circumstantial evidence that nineteen (19) of these votes had been voted "Yes" by the voters, and were marked "No" after the ballots had been deposited in the box at the precinct. The number thus shown comprised about three per centum (3%) of the total number doubly voted. The argument for appellants seems to be that, since they have

shown by circumstantial evidence that some of the double voting was performed by persons opposed to prohibition, the Court should assume that appellees were responsible for all others similarly invalidated, and count all such votes for the "Drys." We do not agree with this contention. Neither do we agree with the contention of appellees that these ballots merely should be thrown out, which in effect would be to declare the opponents of prohibition to be the victors by the majority shown in the recount.

Ballots to the first eighty-four (84) voters in Central Precinct, No. 37, were issued, voted, and deposited with the primary stubs attached. On the original count by the Board of Election Commissioners, these eighty-four (84) ballots were found with the primary stubs still attached. When the box was opened by the Court for the recount, only fifty-two (52) ballots remained in that condition. The difference in the vote of that precinct on the count by the Board of Election Commissioners and the recount by the Court shows the vast majority, if not all, of the thirty-two (32) ballots from which the stubs had been detached to have been voted for the side favoring prohibition. Thus, the circumstantial evidence indicates that someone in favor of prohibition had tampered with the ballots between the count by the Commissioners and the recount by the Court. The circumstances in respect to these thirty-two (32) ballots point as strongly to fraud on the part of the proponents of prohibition, as the circumstances in respect to the nineteen (19) double-marked ballots point to fraud on the part of the opponents of prohibition.

KRS 242.120 provides that any qualified voter may contest a local option election in the same manner provided for the contest of general elections of county officers, by KRS 122.070 to 122.100, inclusive. KRS 122.080, in so far as pertinent, provides:

"If it appears from an inspection of the whole record that there has been such fraud * * * in the conduct of the election that neither contestant nor contestee can be adjudged to have been fairly elected, * * * the Court of Appeals, on appeal, may adjudge that there has been no election."

The result of the election, on the face of the recount, is very close. Nearly one thousand ballots in all were so

mutilated or otherwise tainted with fraud, that their legality properly was questioned. Over six hundred of these ballots contained double markings; it is not reasonable to suppose that that number of voters could make so many honest mistakes. We are satisfied, from an inspection of the whole record, that the election was so permeated with fraud as to be materially affected thereby, and to such an extent that it is impossible for us to determine for which side the majority of legal ballots were cast. Under the Statutes referred to above, it clearly is our duty to decree that no election was held in respect to local option in Bell County on September 11, 1943.

Although the Chancellor assigned a different reason therefor, his conclusion was the same as ours. Wherefore, the judgment must be, and hereby is, affirmed. Hurst et al. v. Paken Oil Co. et al., 287 Ky. 257, 152 S. W. 2d 981.

Whole Court sitting.