## Miracle et al. v. Robbins et al.

June 23, 1950.

R. L. Maddox, Judge.

Cleon K. Calvert for appellants.

Henry L. Bryant for apellees.

JUDGE KNIGHT—Reversing.

On May 7, 1949, an election was held in the Third Magisterial District of Bell County on the question, "Are you in favor of the sale of alcoholic beverages in the Third Magisterial District in Bell County, Kentucky? . . . . . . . . Yes ( )"

No. ( ).

The count of the votes by those whose duty it was so to do resulted in a certification that the total "yes" vote in favor of the sale of such beverages was 581 and the total "no" vote against the sale was 537, or a majority of 44 in favor of the sale. G. W. Robbins and B. F. Simpson, two voters in the district who voted "no," brought this suit against the sheriff and Board of Election Commissioners of Bell County praying that the illegal votes cast against prohibition be determined and deducted from the votes cast against it; that the fraudulent votes be purged and the court adjudge that the legal votes cast in favor of prohibition exceeded those cast against it and that prohibition prevailed in the election. Appellants filed an intervening petition to be made parties under the provisions of KRS 242.120, and the counter-contest or defense to the suit was carried on in their names. After the taking of considerable testimony, the case was submitted and, on September 30, 1949, a judgment was entered adjudging that the total legal votes cast for the sale, that is the "yes" vote, was 493 and the total legal votes cast against the sale, that is the "no" vote, was 527, or a total majority of 34 against the sale. This appeal is prosecuted from that judgment.

There are seven voting precincts in the Third Magisterial District and in each of these the names of some of those voting therein were challenged in the petition filed by appellees or in the intervening petition and counter-contest filed by appellants. Their votes were challenged as illegal because they voted openly or because they did not live in the precinct in which they voted or they had not lived for a sufficient length of time in the

state, county or precinct, or they were minors or were not registered.

It appears to be impossible to hold a fair and honest election in that portion of Bell County involved in this contest, as evidenced by the facts set out in Helton v. Franklin, 297 Ky. 23, 178 S. W. 2d 844, or even in Bell County as a whole, as evidenced by Franklin v. Helton, 298 Ky. 580, 183 S. W. 2d 532. Our vigorous condemnation of the intimidation, fraud and corruption proven in the contest in those two elections appears to have been futile. A prosecution and conviction on some of the proven offenses shown in these elections might be effective. It seems to have become an established custom for those seeking to control elections in this magisterial district to concentrate on one precinct. In the former election, referred to in Helton v. Franklin supra, the dirty work was done in Cubbage precinct. In that case the entire Cubbage precinct was thrown out because it was impossible to determine the total number of illegal votes cast or on which side of the wet and dry question they were cast. The winning side was therefore determined by the vote of the remaining precincts in the district, in which the correct vote could be determined with reasonable accuracy.

### Cardinal Precinct No. 21

In the last election involved in the present appeal, Cubbage had purified itself and it was in Cardinal precinct No. 21 that the dirty work seems to have been done this time. It was in this precinct that the greatest number of irregularities are alleged to have occurred, and in which the greatest number of votes are challenged as illegal. In the petition, appellees challenged as illegal the names of 60 voters to which later 2 more were added, making a total of 62, it being alleged that their votes were illegal because cast openly.

It also challenged as illegal the names of 16 voters whose votes were cast in this precinct, it being alleged that none of them were qualified voters of this precinct when they voted. In their answer and intervening petition appellants challenged 19 votes cast in the precinct, some of them being among those listed by appellees.

In its judgment the lower court found and adjudged that 3 of those challenged in this precinct did not vote at all in this election and the stubs of the ballot book

filed as an exhibit confirmed this. It found and adjudged that the remaining 59 voters of the list of 62 voters challenged for open voting had voted openly on the table and so exposed their ballots that others saw how they voted. The court further found that all of them voted "yes" and the vote of this precinct was purged of these 59 votes for open voting.

Of the list of 16 voters challenged by the appellees as not being qualified voters, the lower court found that 8 of them were illegal voters for other reasons than that they voted openly; further held that they all voted "yes" and the vote of this precinct was purged of these 8 votes. The judgment further purged the names of 2 voters who had been challenged by the appellants. The court found from the evidence that they were illegal voters and had voted "no." The judgment of the court therefore purged and deducted from the certified vote of this precinct 67 "yes" votes and 2 "no" votes.

The evidence as to the voting on the table rests largely on the testimony of the two dry election officers, Newt Lefevers, a judge, and Charlie Hammons, designated as clerk, but who seems to have acted as a judge instead because of his inability to write rapidly or legibly. Lefevers testified that practically half of the 148 voters who voted at Cardinal precinct on that day voted openly; that he told them to go into the booth which some would do and others refuse to do; that the other officers never told them to go to the booth or encouraged them to do so. He was handed a list of 60 names challenged by appellees, as set out in their petition, and he testified that from his own knowledge all of them voted openly on the table and that they voted "yes." He further testified that Ed Simpson, one of the "wet" election officers, and not on the challenged list, voted on the table and voted "yes."

On cross-examination he admitted that he did not make a list of the voters as they voted and the list of 60 names was made up afterwards by him from memory. It was also shown on the cross-examination, by reference to the stub book, that three of those named by him did not vote at all that day, but he insisted that someone called for a ballot in each of their names and voted them. This is refuted by the absence of the names of these three on the stub book.

Charlie Hammons, the other "dry" election officer, corroborated to some extent the testimony of Lefever testifying that of a list of 60 voters handed him, as set out in the petition, with the additional name of Ed Simpson, "wet" election officer, all voted openly on the table and voted "yes."

In contradiction to the above testimony, appellants brought in as witnesses 11 of those challenged as having voted openly and all of them testified that they voted in the booth secretly. In addition, they brought in eight of those challenged as having voted openly and having voted "yes," and all of them testified that they voted openly on the table, but voted "no."

After careful consideration of all the testimony concerning illegal votes cast in this precinct and after making every effort to determine for which side they were cast and therefore from which side they should be deducted, we find it impossible to do so with any degree of accuracy. Any conclusion we would reach would be only guess work and the result of arbitrary action based on unreliable evidence. Accordingly it is our view that the Cardinal precinct should be thrown out as was the Cubbage precinct in the previous election and the result determined from the remaining precincts. We will confine our discussion to such challenged votes in those precincts as are affected by the judgment appealed from in order to determine whether the court erred in its ruling on the legality or illegality of the particular voter challenged. Even this will require long and tedious analysis of the questioned votes, precinct by precinct, but there appears to be no other way to arrive at a correct decision.

### Mathel Precinct No. 18.

Appellees challenged the following names in this precinct: (1) McKinley Harris, (2) Bessie Harris, (3) Elihu Clark, (4) Lorene Clark, (5) Vernon E. Taylor; while appellants challenged the following names: (6) Evelyn C. Jackson, (7) Elihu Clark, (8) Lorene Clark, (9) Hill Ledford, (10) Walter Jackson.

The qualification of voters Nos. 1 and 2 depends on the location of the boundary line between Mathel and Blackmont. They lived on or near this line and were registered in Mathel and appear to have voted there in

good faith. We think the court·did not err in refusing to disqualify them. Hendrickson v. Coign, 304 Ky. 383, 200 S. W. 2d 905.

The evidence clearly shows that the voter listed as Nos. 3 and 7, challenged by both sides, was an illegal voter because he was under 21 years of age. The only question is from which side his vote should be deducted. He himself testified that he voted "dry." The circumstantial evidence, including the fact that he was taken to the polls by Curt Campbell, a worker for the "wets," was the basis of the decision by the lower court that he voted "wet." In view of his direct testimony as to how he voted, we think the court erred in deducting this vote from the "wets." There was no testimony whatever on the voter listed as Nos. 4 and 8, wife of voter listed as 3 and 7, and challenged by both parties. It cannot be assumed that because Lorene Clark is the wife of Elihu Clark that she is also under 21 years of age or that she voted just as he did. Since there was no evidence to sustain his finding as to this voter, the lower court erred in deducting this vote from the "wets."

Voters listed as Nos. 6 and 10 above are husband and wife and occupy the same status. Both are challenged by the wets on the ground that they did not live in Mathel precinct from which they voted, but in Tejay precinct. Both testified that they voted "dry." We think their testimony as to how they voted should prevail over the circumstantial evidence, that they were brought to the polls by a son of Roosevelt Miracle, appellant herein, who was working for the "wets" and hauling voters to the polls. We think the court erred in deducting their votes from the "wets." Probably through oversight the lower court failed to mention Walter Jackson in the judgment or make a definite ruling in his case.

Summary of Mathel precinct: Deduction of 3 from the "wet" certification by the judgment is therefore erroneous. It should have deducted 3 from the "drys."

### Tejay Precinct No. 19.

Appellees challenged the following names in this precinct: (1) William Jackson, (2) George Cornelius, (3) Tilda Kelly, (4) Daisy Whittles, (5) Iva Taylor, (6) Herman Cornelius; while appellants challenged the following names: (7) Howard Cox, (8) Leonard Miracle,

(9) Mary Miracle, (10) Harry Lee Jackson, (11) Nellie Jackson, (12) Rosa Nelson, (13) Carrie Hoskins.

In its judgment the lower court adjudged voters Nos. 1, 3, and 5 listed above to be illegal voters, that they voted "yes," i. e. "wet," and purged them from the certified vote. The proof shows that Tilda Kelly (3) voted openly on the table and voted "yes." Appellants concede that her vote should be purged from the certified vote. There was no evidence to show that the votes of William Jackson (1) and Iva Taylor (5) were illegal; neither was there any evidence, even circumstantial, as to how either of them voted. The only testimony produced by appellees along that line was that of their witness, J. R. Erwin, who testified in regard to William Jackson, "I believe he voted wet, merely because he likes to drink as far as I know—don't know how he voted." This is too flimsy to justify purging this vote. We therefore conclude that the court erred in purging the votes of William Jackson and Iva Taylor from the certified vote.

In its judgment the lower court adjudged voters Nos. 2, 6, 10, 11, 12, and 13 listed above to be illegal voters, that they voted "no," i. e. "dry," and purged them from the certified vote. Appellees concede that Harry Lee Jackson (10), Nellie Jackson (11), and Rosa Nelson (12) were illegal voters, that Carrie Hoskins (13) voted openly on the table, and that all were properly purged. Appellants concede that there was no testimony showing how George Cornelius or Herman Cornelius voted and that it was therefore error for the court to deduct them from the "dry" or "no" vote.

As to voters Nos. 4, 7, 8, and 9, there was not sufficient evidence to determine whether they were legal or illegal voters or how they voted and, correctly, no order was made as to them, as is conceded by both sides.

Summary of Tejay Precinct: The court deducted 3 from the "yes" votes and 6 from the "no" votes. He should have deducted 1 from the "yes" votes and 4 from the "no" votes.

### Blackmont Precinct No. 20.

Appellees challenged the following names in this precinct: (1) Gracie Paul, (2) Henry Maxwell, (3) Carl

Nunn, (4) Wymer Bird, (5) Sam Hall, (6) Mary Chambers; while appellants challenged the following names: (7) James A. Robbins, (8) Carlo M. Taylor.

In its judgment the lower court adjudged voters Nos. 1, 2, 3, 4, 5, and 6 listed above to be illegal voters, that they voted "yes," and purged them from the certified vote. We think the evidence fairly establishes that voters Nos. 3 and 4 were legal voters and that voters Nos. 1, 2, 5 and 6 voted illegally because they were not residents of the precinct. The evidence as to how they voted, whether "wet" or "dry," was not so satisfactory and was purely circumstantial, and was based largely on the fact that they were brought to the polls by "wet" workers and, when challenged, their right to vote was insisted on by the workers for the "wets." Since there was no direct evidence as to how they voted, we cannot say that the lower court erred in its finding of fact on circumstantial evidence that these illegal voters voted "wet," and he was justified in purging the latter four names from the "wet" vote. The evidence did not establish that voters Nos. 7 and 8 were illegal voters and the judgment of the lower court correctly refused to purge their names.

Summary of Blackmont Precinct: Deduction of 6 names from the "wet" certification by the judgment is therefore erroneous. It should have deducted 4 names from the "wets."

### Cubbage Precinct No. 23.

A few votes were challenged in this precinct by each side but the court below found there was not sufficient evidence to justify purging any of those challenged. Appellants make no complaint of this, and appellees make little. We think the lower court was correct in his ruling on this precinct.

### Wilder Precinct No. 46.

Appellees challenged the following names in this precinct: (1) Earl Taylor, (2) Estella Cheek, (3) Janline Wilder, and (4) Jim McGeorge; while appellants challenged the following names: (5) John Lucy, (6) Rosa Lucy.

In its judgment the court below purged (1) Earl Taylor because he was not registered in the precinct,

and purged (2) Estella Cheek, (3) Janline Wilder, (4) Jim McGeorge, because they voted openly and the statutory requirement for open voting was not complied with. The judgment also purged the names of John Lucy (5) and Rosa Lucy (6) because they were not residents of the precinct.

The evidence satisfactorily establishes that Earl Taylor was not a registered voter in the precinct in which he voted and had no right to vote. There is no evidence as to how he voted and the court therefore erred in purging his name from the list of "yes" votes. Since Estella Cheek, Janline Wilder and Jim McGeorge voted openly and it was proven that they voted "yes," they were properly purged from the "yes" votes. Appellees make no complaint of the votes of John Lucy and Rosa Lucy being purged from the "no" list.

Summary of the Wilder Precinct: The court deducted 4 from the "yes" votes and 2 from the "no" votes. He should have deducted 3 from the "yes" votes and 2 from the "no" votes.

### Howard Precinct No. 50.

Both appellants and appellees challenged the following votes in this precinct: (1) Dora Ellen Griffen, (2) Sarah Griffen, (3) Mary Griffen, (4) Martha Miller, (5) Milburn Miller.

In its judgment, the court below found all of these to be illegal voters, that they voted "yes," and purged them from the "yes" votes. The evidence justified the finding of the court that they were illegal voters because not living in the precinct, but there is no satisfactory evidence to determine that they voted "yes." We therefore think the court erred in purging these from the list of "yes" voters.

Summary of the Howard Precinct: The court deducted 5 from the "yes" votes and none from the "no" votes. He should have made no deduction from either the "yes" or "no" votes.

### Summary

Summarizing the vote and changes in the six precincts: From the total of 490 "wet" votes, as originally certified in the six precincts, there should be deducted 8 votes, leaving a balance of 482 "wet" votes, and from

the 482 "dry" votes, as originally certified, there should be deducted 9 votes, leaving a balance of 473. The net result is that with the Cardinal precinct thrown out for the reasons heretofore indicated, there is a majority of 9 in the remaining 6 precincts in favor of the sale of alcoholic beverages in the Third Magisterial District.

The judgment is therefore reversed with directions to enter one in accordance herewith.